UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM PARZIALE, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.: 04-11377-RBC |
| | ) | |
| AMERICAN HERITAGE LIFE | ) | |
| INSURANCE COMPANY, A | ) | |
| WHOLLY OWNED SUBSIDIARY | ) | |
| OF THE ALLSTATE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF WILLIAM PARZIALE'S MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

This case is brought by William Parziale (Parziale), the beneficiary of a life insurance policy issued to Maryann Veronesi (Veronesi) by the defendant, American Heritage Life Insurance Company (AHLI). After Veronesi's death, AHLI denied Parziale's request for payment asserting that Veronesi misrepresented information on her application for the policy. Parziale is entitled to summary judgment because there is no evidence that Veronesi made any *willful* misrepresentation to AHLI. (emphasis supplied).

I.     **STATEMENT OF FACTS**

Plaintiff, William Parziale (Parziale), is the beneficiary of a life insurance policy issued by the defendant, American Heritage Life Insurance Company (AHLI) to the late Maryann Veronesi through Robert Ehrlich (Ehrlich), an independent agent for AHLI. Exhibit "A." Parziale and Veronesi were engaged to be married and had recently purchased a home. Parziale testified that both he and Veronesi wanted disability insurance to protect their home in the event one or the other was out of work. Parziale Tr. 104:22-105:1.

It is unclear as to exactly when Erhlich met with Veronesi to complete the application for insurance. Ehrlich testified that applications would sit on his desk "maybe two, maybe three days, maybe four days" before he would mail the application to the insurance company. He

would date the application on the day he would mail it. Ehrlich Tr. 67: 2-5. Ehrlich himself dated Veronesi's application July 25, 2001. Ehrlich Tr. 105: 5-9.

When Ehrlich met with Veronesi, he took one application for a disability policy as well as the life insurance policy at issue in this case. Exhibit "I." Both policies were issued by AHLI without a medical exam. At the time of their meeting, Veronesi appeared to Ehrlich to be in good health and did not complain of any symptoms of any kind. Ehrlich Tr. 78: 10-16. Even though Ehrlich had no reason to believe that Veronesi would have been rejected for insurance if she had been required to take a physical exam, it was his standard practice not to write a policy that required a physical exam.[1]

Sometime after her meeting with Ehrlich, Veronesi went to the Lahey Clinic on the evening of July 25, 2001. She was complaining of difficulty breathing and chest pain. Since it was after 5:00 pm, she was seen in the emergency room. The Lahey Clinic records indicate that CT-scan was ordered as part of Veronesi's work-up. The CT-scan showed evidence of a mediastinal tumor. Exhibit "P." Sometime after 10:00 pm Veronesi left the Lahey Clinic with Parziale at her side. Veronesi returned to Lahey Clinic on July 26, 2001 for a further work-up. She was seen by Dr. Neil Weiner (Weiner). Weiner's Progress Notes indicate that Weiner, in conjunction with a surgeon, would decide the best location for a biopsy of the mediastinal mass. His initial impression was that Veronesi might have Hodgkin's disease or non-Hodgkin's lymphoma, but goes on to opine, "I cannot explain the pain and tenderness in her left chest wall. We need to rule out metastatic disease in that area." Exhibit N.

On August 21, 2001 Veronesi went to Massachusetts General Hospital for a second opinion which confirmed mediastinal adenopathy and found evidence of extension of the tumor to the right side of her mediastinum. Shortly thereafter, Veronesi began chemotherapy treatment. On February 27, 2002, Veronesi was again admitted to Lahey Clinic Medical Center. The Admitting Diagnosis was "[p]eumonia, organism unspecified;" a principal diagnosis of "[p]neumonia due to gram-negative bacteria" was also provided. Exhibit D.

Veronesi died on March 4, 2002, eight (8) months after the July 25, 2001 visit to Lahey. She was just barely thirty-three years old at the time of her death. Exhibit "F."

---

[1] Early in his career in insurance sales, on two separate occasions, Ehrlich sold two life insurance policies to acquaintances. At the suggestion of his manager, the policies Ehrlich sold required medical exams. Both potential insureds were denied coverage because upon examination they were both found to suffer from previously undiagnosed diabetes. The proposed insureds were "hopping mad" at Ehrlich because now they were on record as having diabetes. Ehrlich was "hopping mad" because he did not get the commission. See Ehrlich Tr. 64:1-65:13.

Parziale timely notified AHLI of Veronesi's death. He reported the cause of death as pneumonia.[2] After receiving notice of Veronesi's death, AHLI requested that Parziale provide the names of Veronesi's doctors. Parziale provided AHLI with the names of Drs. Thomas Fry and Anthony Compagna. (Parziale Tr. 118: 11-11). These are the doctors who cared for Veronesi during her last illness and whose names appear on her death certificate.

On March 7, 2003, more than one year after Veronesi's death, AHLI informed Parziale that "we are now in receipt of medical records which indicate that Ms. Veronesi's response should have been "yes" to question #14, part two, (a) and (b), in her application for coverage." Question 14 of the application reads as follows:

> "**NON-MEDICAL QUESTIONNAIRE**. (Exclude history of: colds, flu, minor injuries, normal childbirth, seasonal hay fever, appendicitis or tonsillitis.)
>
> **Part 2:** Has any person to be insured:
>
> a. been examined or treated at a hospital or other medical facility (within last 5 years) or are they currently under the care of the doctor?
>
> b: been advised to have or contemplate having any diagnostic test, treatment or surgery?"

Boxes were provided to the right of the question for either a "Yes" or "No" response.

"Our underwriting department has reviewed these records and advised that had they been correctly informed by Ms. Veronesi of her history at the time she applied for coverage on July 25, 2001 policy 90 - 95071110 would not have been issued." AHLI declined payment and rescinded the policy. Exhibit "H."

AHLI also informed Karin Ouellette, as Executrix of Veronesi's estate, of it's decision to rescind the policy. In its letter to Ouellette, AHLI states that it had reviewed Dr. Rothchild's medical records and that his "records have become pivotal in our adjudication of a claim for proceeds against Policy 90-95071110, owned by Maryann Veronesi, insuring her life." A copy of AHLI's letter to Karin Ouellette is attached hereto, marked "T" and incorporated herein.

---

[2] See Parziale Tr. 119:15-19. See also Exhibits D and E.

II.   **ISSUE**

   **Whether AHLI Can Meet Its Burden of Proof that Statements Made by Veronesi Were Willfully False, Fraudulent or Misleading.**

III.   **ARGUMENT**

   A.   **SUMMARY JUDGMENT STANDARD**

   The role of summary judgment is "to pierce the pleadings and to assess in order to see whether there is a genuine need for trial." *Brigham vs. U.S.*, 983 F. Supp. 46, 47 (D. Mass. 1997) (quoting *Garside vs. Osco Drug Inc.*, 895 F. 2d. 46, 50 (1st Cir. 1990)).

   The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Carteret*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial. Id. at 323, 106 S. Ct. at 2552.

   In viewing the evidence presented on a summary judgment motion, "the inferences to be drawn from the underlying facts contained in affidavits, pleadings, depositions, answers to interrogatories, and admissions, must be viewed in the light most favorable to the party opposing the motion." *Fling v. Hollywood Travel & Tours*, 765 F.Supp. 1302, 1304 (N.D.Ohio 1990) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, speculative and conclusory allegations by the non-movant are insufficient to prevent a summary judgment motion from being granted. *Allen v. Coughlin*, 64 F.3d 77, 80 (2d Cir.1995). The non-movant is required to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 582, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

   "The plain language of Rule 56 (c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, as to which that party will bear the burden of proof that trial." See *Celotex supra*. Where the moving party does not have the burden of proof at trial, it is "entitled to

summary judgment, if [it] demonstrates . . . that the party opposing motion has no reasonable expectation of proving an essential element of that party's case." Id at 322.

### B.  LEGAL ARGUMENT

**There Is No Evidence that Any Statement Made by Maryann Veronesi on Her Application for Insurance Was Wilfully False, Fraudulent or Misleading.**

M.G.L. c. 175 § 124 provides, in pertinent part as follows:

> "In any claim arising under a policy issued in the Commonwealth by any life insurance company without a previous medical examination, the statements made in the application as to the age, physical condition and family history of the insured shall be held to be valid and binding on the company; but the company shall not be debarred from *proving* as a defense to such claim that said statements were *willfully false, fraudulent or misleading*." (emphasis supplied)

M.G.L. c. 175, §124.

AHLI issued two policies of insurance to Veronesi -- a life insurance policy and a disability insurance policy. AHLI did not require a medical exam for either policy. Veronesi worked until the time of her death and made no claim for disability benefits. Upon he death, Parziale, Veronesi's fiancée and the beneficiary of her life insurance policy, submitted a claim for benefits. AHLI refused to pay any benefits to Parziale asserting that Veronesi made material misrepresentations in her application for coverage. Exhibit H.

"Imposing a higher burden of proof on a life insurer when it contests a policy issued without a medical examination than when it contests a policy issued after a medical examination is the purpose of statute which makes statements in the application for a policy issued without previous medical examination binding on the insurer, but allows a defense that the statements were wilfully false, fraudulent, or misleading." See *Robinson v. Prudential Insurance Company of America et al.*, 56 Mass.App.Ct. 244, 776 N.E.2d 458 (2002) referring to M.G.L. c. 175, § 124.

On March 7, 2003 AHLI informed Parziale that because Veronesi made "material misrepresentations" on her application for coverage, the policy would be rescinded. AHLI based its denial upon Veronesi's response to Questions 14 (a) and (b). AHLI further informed Parziale that because he failed to "provide a complete list of physicians who treated your fiancée, it made

it a challenge for us to locate complete medical records on Ms. Veronesi . . . . Despite said challenge, we are now in receipt of medical records which indicate that Ms. Veronesi's response should have been "yes" to question 14, Part 2, a and b, in her application for coverage." (Exhibit "H"). That same day, AHLI also directed a letter to Karin Ouellette (Ouellette), Executrix of Veronesi's estate. AHLI informed Ouellette that Dr. Rothchild's records that were "pivotal in our adjudication of a claim for proceeds against Policy 90-95071110, owned by Maryann Veronesi, insuring her life." A copy of letter dated March 7, 2003 directed to Karin Ouellette is attached hereto, marked "T" and incorporated herein.

A review of Dr. Rothchild's medical records and Progress Notes dated July 12, 2001 indicate that Veronesi "is seen and examined by Dr. Bilello." She presented complaining of "increased daytime somnolence . . . difficulty swallowing with food sticking and regurgitation . . dull aching in the left upper chest which is tender. . . has had a sore throat and earache without fever, sweats or weight loss." The Plan, recorded on the medical record, was to: "Check CBC, SGOT, heterophile and HIV today, and mono." The handwritten Progress Notes from that same day additionally provide "CXR -- return sta 7."[3] Exhibit "L." A chest x-ray was done on July 13, 2001 the results of which found "No acute abnormality." Exhibit "M." There is no evidence in either the two pages of handwritten Progress Notes or the dictated medical record of Dr. Rothchild that either Rothchild or Bilello advised Veronesi at that time that she should undergo a CT-scan. The record does reflect Veronesi's belief that she thought she had "mono" -- she had had "mono" twice in the past with similar symptoms. Exhibit "N."

When queried, Dr. Rothchild advised: a) that he did not speak with Veronesi about the results of the radiological study or about any recommendation for a CT scan; and b) that while there was an order for a thoracic CT-scan in his records "unfortunately, the order was undated." Exhibit "O."

With nothing more than an undated order for a CT-scan and an insurance agent who does not know when he took the application for insurance, AHLI refused to pay any benefit to Parziale and rescinded the policy asserting Veronesi made "material misrepresentations on her application for insurance."

There is no evidence that Veronesi believed, or had any reason to believe, that she had anything other than "mono" at the time she completed the application for insurance. Of even

---

[3] CXR return sta 7 = chest x-ray to be read on a stat basis.

6

greater significance, there is no evidence that she was told to have a CT-scan, or any other additional diagnostic testing. Actual intent to deceive is not just presumed, but must be proved. *Davidson v. Massachusetts Casualty Ins. Co.*, 325 Mass. 115, 119, 89 N.E.2d 201, 204 (1949). "The burden of proof is upon Aetna to establish the affirmative defense, no matter how clear it might be that a false representation was made, that the decedent's representations were made with the 'actual intent to deceive'." *Rappe v. Metropolitan Life Ins. Co.*, 322 Mass. 438, 440, 77 N.E.2d 641, 642 (1948). There is no evidence that Veronesi completed the application for insurance with an intent to deceive. There is no evidence that AHLI will be able to meet its burden of proving, pursuant to M.G.L. c. 175 § 124, that any statements made by Veronesi were willfully false, fraudulent or misleading.

AHLI issued a life insurance policy and a disability policy to Veronesi without requiring a medical exam. AHLI now bears the heavy burden of proof to show that the answers on Veronesi's application for insurance were willfully false, fraudulent or misleading at the time she made them. AHLI cannot even establish when the application was taken, nor when, if ever, prior to the application, Veronesi was advised to have a CT-scan.

## CONCLUSION

For all of the above reasons, plaintiff, William Parziale, respectfully requests this Court grant this motion for summary judgment and order the defendants to pay the proceeds of the policy to him, as well as to award him legal fees and cost, and for such other relief as this Court deems equitable and just.

William Parziale,
By his attorney,

Patricia Michaels
LAW OFFICE OF PATRICIA MICHAELS
10 Tremont Street, 4th Floor
Boston, MA 02108
(617) 227-1550
BBO#642945

Dated: May 23, 2005