UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM PARZIALE, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.: 04-11377-RBC |
| | ) | |
| AMERICAN HERITAGE LIFE | ) | |
| INSURANCE COMPANY, A | ) | |
| WHOLLY OWNED SUBSIDIARY | ) | |
| OF THE ALLSTATE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF WILLIAM PARZIALE'S
STATEMENT OF MATERIAL FACTS OF RECORD IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, William Parziale (Parziale), pursuant to and in accordance with Local Rule 56.1, submits this statement of undisputed material facts of record as to which he contends there is no genuine issue to be tried in support of his motion for summary judgment.

1. On July 25, 2001 defendant, American Heritage Life Insurance (AHLI), issued a ten (10) year renewable and convertible term life insurance in the amount of $99,000 bearing policy number 95071110 and a disability policy to Maryann Veronesi (Veronesi) naming Parziale as the beneficiary, a copy of which is attached hereto, marked "A" and incorporated herein.

2. Robert Ehrlich (Ehrlich), an independent agent of AHLI, met with Veronesi sometime on or before July 25, 2001 to take the application for the policies. A copy of Ehrlich's deposition transcript is attached hereto, marked "B" and incorporated herein. Ehrlich Tr. 105: 10-17.

3. Ehrlich is not sure when he took the application. Ehrlich Tr. 76:13-77:8.

4. Ehrlich's standard practice was:
   a) never to write a policy that called for a physical exam. Ehrlich Tr. 64:2-65: 13.

    b) to date the application on the day he would mail it to the company. Ehrlich Tr. 67: 1-7.

  5. Ehrlich had no reason to believe Veronesi would have been rejected if she had a physical. Ehrlich Tr. 66: 8-10.

  6. Veronesi appeared to be in good health and did not complain of any symptoms of any kind when Ehrlich met with her. Ehrlich Tr. 78: 10-16.

  7. Ehrlich did not explain the application to Veronesi. Ehrlich Tr. 86: 11-13.

  8. It was Ehrlich's standard practice to tell applicants "Here, fill it out. You know yourself better than I do." Ehrlich Tr. 86: 5-13.

  9. Veronesi never submitted a claim for disability benefits from AHLI and worked a full forty hour week through February 26, 2002. A copy of a letter from defendant to Veronesi's employer (with attachments) is annexed hereto, marked "C" and incorporated herein.

  10. On February 27, 2002, Veronesi was admitted to Lahey Clinic Medical Center. The Admitting Diagnosis was "[p]neumonia, organism unspecified;" a principal diagnosis of [p]neumonia due to gram-negative bacteria." A copy of the Lahey Clinic Medical Center Patient Summary Data is attached hereto, marked "D" and incorporated herein.

  11. Veronesi died on March 4, 2002 at the age of 33.

  12. The Lahey Clinic Discharge Summary listed Veronesi's [d]iagnoses at death as: a) [s]eptic shock secondary to gram negative pneumonia; b) [a]dvanced large-cell mediastinal carcinoma; c) [s]tatus post full radiation therapy; d) [c]hemotherapy. A copy of the Lahey Clinic Discharge Summary is attached hereto, marked "E" and incorporated herein.

  13. The causes of death listed on the death certificate were: a) Mediastinal large cell carcinoma, approximate interval between onset and death - 5 months; b) Respiratory failure, approximate interval between onset and death - 2 days; c) Sepsis, approximate interval between onset and death -3 days; d) Cardiac arrest, approximate interval between onset and death - 10 minutes." A copy of the death certificate is attached hereto, marked "F" and incorporated herein.

  14. On March 4, 2002, Parziale notified the defendant of Veronesi's death by telephone. A copy of Parziale's deposition transcript is attached hereto, marked "G" and incorporated herein. Parziale Tr. 116 10:21.

  15. By letter dated March 7, 2003, a copy of which is attached hereto, marked "H" and incorporated herein, defendant advised Parziale that the policy of insurance issued to

Veronesi was to be rescinded and that it would not honor the claim for benefits because of "material misrepresentations in her application for coverage" and specifically referenced Veronesi's answers to Question 14, Part 2 (a) and (b).

16. Question 14 of the application reads as follows:

**NON-MEDICAL QUESTIONNAIRE.** (Exclude history of: colds, flu, minor injuries, normal childbirth, seasonal hay fever, appendicitis or tonsillitis.)

**Part 2:** Has any person to be insured:

a. been examined or treated at a hospital or other medical facility (within last 5 years) or are they currently under the care of the doctor?

b: been advised to have or contemplate having any diagnostic test, treatment or surgery?"

Boxes were provided to the right of the question for either a "Yes" or "No" response. A copy of Veronesi's application for insurance is attached hereto, marked "I" and incorporated herein.

17. All of the questions on Veronesi's application were checked "No." Exhibit "I."

18. Karen Ouellette, Veronesi's close friend of 12 years, described Veronesi as a fair and honest person. A copy of Ouellette's deposition transcript is attached hereto, marked "J" and incorporated herein. Ouellette Tr. 64:19-65:6.

19. Veronesi's medical records indicate that on or about December 17, 2000 she saw Dr. John McCarthy for "right flank pain" believed to be cystitis. A copy of the Lahey Clinic record dated December 17, 2000 attached hereto, marked "K" and incorporated herein.

20. On July 12, 2001, Veronesi saw Dr. Joseph Rothchild for several symptoms including fatigue, difficulty swallowing food and a dull ache in left upper chest, sore throat and earache without fever, sweats or weight loss. A copy of Dr. Rothchild's medical record dictated July 12, 2001 (transcribed July 19, 2001) and Progress Notes from Veronesi's July 12th visit are attached hereto, marked as "L" and incorporated herein.

21. The Progress Notes do not indicate a CT-scan had been ordered as part of Veronesi's "Plan." Exhibit "L."

22. A chest x-ray dated July 13, 2001 (resulted July 16, 2001) found "1) No acute abnormality; 2) slight AP window fullness, most likely a *normal* variant, prominent pulmonary artery. However CT is recommended to exclude the possibility of adenopathy, if no old films are

available for comparison (none currently available) (emphasis added). A copy of the radiological report dated 7/13/01 is attached hereto, marked "M" and incorporated herein.

23.  There is no evidence that Veronesi was informed of the results of the radiological study.

24.  A blood test performed on July 12, 2001 was reported as normal. A copy of Lahey Clinic Hematology report dated July 26, 2001 is attached hereto, marked "N" and incorporated herein.

25.  Dr. Rothchild did not speak with Veronesi regarding a possible diagnosis other than discussing a possible infection. A copy of a letter dated September 24, 2003 from Dr. Rothchild is attached hereto, marked "O" and incorporated herein.

26.  An undated order for a thoracic CT scan was contained in Dr. Rothchild's records. The undated order was written by his resident, Dr. Bilello. Exhibit "O."

27.  Veronesi went to the Lahey Clinic emergency room at 5:10 p.m. on the evening of July 25, 2001. A copy of the Lahey Clinic Emergency Room records dated July 25, 2001 are attached hereto, marked "P" and incorporated herein.

28.  Parziale did not know Veronesi was going to the emergency room. Parziale Tr. 83: 19-20.

29.  Parziale did not go with Veronesi to the emergency room because "there was nothing to be concerned about." Parziale Tr. 83: 12-15.

30.  A CT-scan of Veronesi's neck and chest was done at Lahey on July 25, 2001 at 6:35 p.m. A copy of Progress Notes evidencing the July 25, 2001 CT-scan is attached hereto, marked "Q" and incorporated herein.

31.  Veronesi was discharged from Lahey at 10:20 p.m. There is no evidence that she left Lahey Clinic at any time between her 5:10 p.m. admission and her 10:20 p.m. discharge. Exhibit "P."

32.  On July 26, 2001 Veronesi went to Lahey Clinic for a consultation with Dr. Neil J. Weiner. Exhibit "N."

29.  Dr. Weiner's consultation report recites Veronesi's medical history and notes that she had "two episodes, in 1995 and 1997 consisting of several weeks of fatigue, sore throat and swollen lymph nodes which were diagnosed as 'mono'." Exhibit "N".

31.     On August 21, 2001 Veronesi went to Massachusetts General Hospital (MGH) for a second opinion. A copy of the MGH Cancer Center Office Visit report dated August 21, 2001 is attached hereto, marked "R" and incorporated herein.

32.     The MGH report confirms that a CT-scan was performed at the Lahey Clinic emergency room on July 25, 2001. Exhibit "R."

33.     The MGH report found that Veronesi (a/k/a Fink) had "significant mediastinal adenopathy and evidence of a tumor to the right side of her mediastinum . . . Despite the absence of an obvious mass in the chest, this is more likely related to an occult lung cancer." Exhibit R.

34.     On April 26, 2001, after reviewing the MGH Second Opinion, a representative of AHLI made the recommendation "I believe we should pay this claim" in the claim notes. A copy of the claim notes are attached hereto, marked "S" and incorporated herein.

                                              WILLIAM PARZIALE,
                                              By his attorney,

                                              Patricia Michaels
                                              LAW OFFICE OF PATRICIA MICHAELS
                                              10 Tremont Street, 4thFloor
                                              Boston MA 02108
                                              (617) 227-1550
                                              BBO#642945

Dated: May 23, 2005