```
 1                                    Volume:    I
                                      Pages:     1 to 157
 2                                    Exhibits:  1 to 10

 3

 4            UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS
 5
     * * * * * * * * * * * * * * *
 6   WILLIAM PARZIALE,
                         Plaintiff,
 7
          vs.                            Civil Action
 8                                       No. 04-11377-RBC
     AMERICAN HERITAGE LIFE INSURANCE
 9   COMPANY, A WHOLLY OWNED SUBSIDIARY
     OF THE ALLSTATE CORPORATION,
10                       Defendant.
     * * * * * * * * * * * * * * *
11

12

13

14            DEPOSITION OF WILLIAM P. PARZIALE, a
     witness called on behalf of the Defendant, taken
15   pursuant to the applicable provisions of the Federal
     Rules of Civil Procedure before Cynthia A. Powers,
16   Shorthand Reporter and Notary Public in and for the
     Commonwealth of Massachusetts, at the law offices of
17   Day, Berry & Howard LLP, 260 Franklin Street, Boston,
     Massachusetts, on Wednesday, March 9, 2005,
18   commencing at 10:51 p.m.

19

20                      * * * * *

21

22
                      KACZYNSKI REPORTING
23                 72 Chandler Street, Suite 3
                   Boston, Massachusetts 02116
24                      (617) 426-6060
```

KACZYNSKI REPO[...]

1      APPEARANCES:

2              PATRICIA MICHAELS, ESQUIRE
               10 Tremont Street, 4th Floor
3              Boston, Massachusetts 02108
               (617) 227-1550
4              Representing the Plaintiff

5              DAY, BERRY & HOWARD LLP
               By Hobart F. Popick, Esquire
6              260 Franklin Street
               Boston, Massachusetts 02110
7              (617) 345-4600
               Representing the Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

76

1    A.    No.
2    Q.    After work?
3    A.    Most, yes.
4    Q.    After dinner?
5    A.    Yeah, mostly.
6    Q.    You would drive there together to the
7  gym together?
8    A.    Yeah, or we would meet, varies.
9    Q.    Did Ms. Veronesi go to the emergency
10 room on July 25th?
11   A.    Yes.
12   Q.    Did you go with her to the emergency
13 room?
14   A.    No, I met her there actually. She was
15 there and then I came afterward.
16   Q.    And what hospital was this emergency
17 room at?
18   A.    Burlington.
19   Q.    In Burlington?
20   A.    Yes.
21   Q.    Do you remember what hospital?
22   A.    Lahey Clinic.
23   Q.    Did Ms. Veronesi drive herself to the
24 emergency room?

83

1   A.   Yes.
2   Q.   It says 17:10?
3   A.   Yes.
4   Q.   Is it fair to say that Ms. Veronesi
5   would have entered the emergency room around that
6   time?
7   A.   Yes.
8   Q.   Why didn't you go with her to the
9   emergency room?
10  A.   Why didn't I go with her to the
11  emergency room?
12  Q.   Why did you not go with her to the
13  emergency room?
14  A.   There was nothing to be concerned
15  about.
16  Q.   There was nothing to be concerned
17  about the fact that she was going to the emergency
18  room?
19  A.   I did not know she was going to the
20  emergency room.
21  Q.   What were you doing that afternoon?
22  A.   I don't remember.
23  Q.   Did you watch TV?
24  A.   Probably possible.

1   insurance; is that right?

2          A.    I don't know.

3          Q.    But it is your testimony that she was

4   interested in purchasing disability insurance; is

5   that correct?

6          A.    Yes.

7          Q.    Why was she interested in purchasing

8   disability insurance?

9          A.    I don't know.  She thought she might

10  need it or have it.  I don't know.

11         Q.    Did she have health insurance through

12  her work?

13         A.    Yes, she did.

14         Q.    Did she have any other insurance

15  through her work?

16         A.    I don't know.  We were in the

17  beginnings of buying a home together, and she figured

18  that maybe she'd need disability if she was to be out

19  of work, like I figured I would need disability if I

20  was to be out of work, to keep the mortgage papers up

21  and not lose the house under default.

22                We were trying to keep a close watch

23  on our assets and long-term relationships and

24  marriage and everything; we just wanted the house to

105

1  be there for us when we grow old.
2       Q.   Isn't it true that you had already
3  been living in the house for several months at this
4  point?
5       A.   Probably. I don't recall how long.
6       Q.   You testified earlier that you moved
7  into the house sometime in the late winter; is that
8  right?
9       A.   Correct.
10      Q.   And this was in the middle of July; is
11 that right?
12      A.   Correct.
13      Q.   Several months after you had already
14 purchased the house; isn't that right?
15      A.   If that's what it comes out to. I
16 don't know.
17      Q.   How was it that you understood that
18 Ms. Veronesi was interested in disability insurance?
19      A.   I don't remember.
20      Q.   Did she tell you that that's what she
21 wanted?
22      A.   I don't recall. I don't remember the
23 conversation we had.
24      Q.   Did you discuss any of that with

116

1  So no, I didn't -- I knew she was ill, but for
2  someone to be terminally ill and still work eight
3  hours a day and do their taxes knowing that they have
4  a week left, no, I don't.
5           Q.   When did you first contact American
6  Heritage about this policy?
7           A.   I don't remember.
8                (Marked Exhibit 6; Death Claim
9                Notification by Phone Call)
10          Q.   I'm showing the witness what's been
11 marked Exhibit 6.  It's entitled, Death Claim
12 Notification by Phone Call.  It's dated March 4,
13 2002.  Take as much time as you need to look this
14 over.
15          A.   Mm-hmm.
16          Q.   You've had a chance to look this over?
17          A.   Yeah.
18          Q.   Is it fair to say that you contacted
19 American Heritage on March 4, 2002 about this policy
20 to make a claim?
21          A.   Yes.
22          Q.   What day did Ms. Veronesi die?
23          A.   March 4, 2002.
24

118

1   the --
2         A.    Yes.
3         Q.    -- upper portion of the form?
4         A.    Mm-hmm.
5         Q.    Where it says number two and there's
6   some doctors that are listed there; do you see that?
7         A.    Yes, yes.
8         Q.    Could you read the names of the doctor
9   there?
10        A.    Dr. Anthony Compagna of Lahey Clinic,
11  Burlington; Dr. Thomas Fry of Mall Road, Burlington.
12        Q.    Why did you not disclose Dr. Rothchild
13  in this section?
14        A.    I did not know about him.
15        Q.    How did you know about Mr. Compagna?
16        A.    He was the ICU unit doctor.
17        Q.    Had you met him before?
18        A.    No.
19        Q.    How did you know that he was the ICU
20  doctor?
21        A.    Because I was in ICU the day that
22  MaryAnn passed away and he was the attending
23  physician for her in the intensive care unit.
24        Q.    And Dr. Fry, how did you know him?

                                                                    119

1        A.    He was with Dr. Compagna in the
2   intensive care unit.
3        Q.    You testified earlier that you have
4   drove Ms. Veronesi to some chemotherapy appointments;
5   is that correct?
6        A.    Correct.
7        Q.    Are these the doctors that supplied
8   those services?
9        A.    No.
10       Q.    And why didn't you list those doctors
11  here?
12       A.    Didn't cross my mind.  Same thing,
13  like I notice place of death says Stoughton and not
14  Burlington.  I was distraught.
15       Q.    Do you see on the left-hand side under
16  part A where it says, what was the cause of death and
17  you wrote pneumonia; is that correct?
18       A.    That's what the doctor said that the
19  cause of death was at the time in the ICU unit.
20              (Marked Exhibit 8; Death Certificate)
21       Q.    I've shown the witness what's been
22  marked as Exhibit 8.  It's a death certificate issued
23  by the Town of Burlington.
24       A.    Yes.

120

1    Q.   I'd like to draw your attention to the
2  middle section of the page where it says number 29,
3  part one and it says immediate cause, you see that?
4    A.   Yes.
5    Q.   And then it says immediate cause,
6  mediastinal large cell carcinoma and after that it
7  says respiratory failure, after that it says sepsis
8  and after that it says cardiac arrest?
9    A.   Correct.
10   Q.   Is this the death certificate that you
11 submitted with your claim form?
12   A.   Yes, it was.
13   Q.   Why did you list the cause of death as
14 pneumonia?
15   A.   Because that's what I was told.  I
16 don't -- what you have just listed, all these medical
17 things, from what I was told is that she got
18 pneumonia in the lungs and it was a virus, bacterial,
19 from the hospital from what the doctors told me.  I
20 would say it's pneumonia from what they told me.
21   Q.   Did you know Ms. Veronesi had been
22 diagnosed with cancer?
23   A.   Of?
24   Q.   The lungs?

157

1   COMMONWEALTH OF MASSACHUSETTS)
                                 )
2   SUFFOLK, SS.                 )

3

4       I, Cynthia A. Powers, Shorthand Reporter and
    Notary Public in and for the Commonwealth of
5   Massachusetts, do hereby certify that there came
    before me on the 9th day of March 2005, at 10:51
6   a.m., the person hereinbefore named, who was by me
    duly sworn to testify to the truth and nothing but
7   the truth of his knowledge touching and concerning
    the matters in controversy in this cause; that he was
8   thereupon examined upon his oath, and his examination
    reduced to typewriting under my direction; and that
9   the deposition is a true record of the testimony
    given by the witness.

10
        I further certify that I am neither attorney
11  or counsel for, nor related to or employed by, any of
    the parties to the action in which this deposition is
12  taken, and further that I am not a relative or
    employee of any attorney or counsel employed by the
13  parties hereto or financially interested in the
    action.
14
        IN WITNESS WHEREOF, I have hereunto set my
15  hand and affixed my notarial seal this 12th day of
    March 2005.
16

17

18
                            CYNTHIA A. POWERS
19                          NOTARY PUBLIC
                            MY COMMISSION EXPIRES
20                          JULY 2, 2010

21

22

23

24