UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM PARZIALE, )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>AMERICAN HERITAGE LIFE INSURANCE )<br>COMPANY, A WHOLLY OWNED )<br>SUBSIDIARY OF THE ALLSTATE )<br>CORPORATION, )<br>)<br>*Defendant.* )<br>) | Civil Action No. 04-11377-RBC |

**DEFENDANT AMERICAN HERITAGE LIFE INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF WILLIAM PARZIALE'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rules 7.1 and 56.1, Defendant American Heritage Life Insurance Company ("AHL") hereby submits its Opposition to Plaintiff William Parziale ("Parziale")'s Motion for Summary Judgment (the "Motion"), and its Response to Plaintiff William Parziale's Statement of Material Facts of Record and Statement of Additional Undisputed Facts, filed herewith, which AHL specifically incorporates herein by reference.

**I.    INTRODUCTION**

In this action, Parziale seeks to obtain a benefit under a life insurance policy issued by AHL to his late fiancée, Maryann Veronesi ("Veronesi"). Parziale also alleges claims for emotional distress and for unfair and deceptive trade practices under M.G.L. c. 93A. Parziale now moves for summary judgment on his breach of contract claim.[1] As demonstrated below,

---

[1] It is unclear whether Parziale is also moving for summary judgment on his claim under M.G.L. c. 93A. Although Parziale's Motion for Summary Judgment requests that the Court "grant him summary judgment and award him fees and costs … as well as treble damages,

Parziale has failed to carry his burden of demonstrating that there is no issue of material fact to be tried, and therefore Parziale's Motion must be denied.

## II.   STATEMENT OF FACTS

1.   On September 21, 2001, AHL issued a policy insuring the life of Ms. Maryann Veronesi in the amount of $99,000 under AHL Policy Number 95071110 (the "Policy"). Parziale was named as a beneficiary under the Policy. The Policy application is dated July 25, 2001, and was issued with an effective date of July 25, 2001. (See American Heritage Life Insurance Company Policy Specifications, AHL 00040, Ex. 2)[2].

2.   Although Veronesi had sought medical treatment at the Lahey Clinic in Burlington, Massachusetts several times for a variety of ailments during the months prior to her application for the Policy, she made no mention of this on her application. (See American Heritage Life Insurance Company Policy Specifications, AHL 00052, Ex. 2; Lahey Clinic Emergency Department Admission Record, Ex. 7; Lahey Clinic Emergency Department-Patient Flow Sheet, Ex. 9; Lahey Clinic Ambulatory Order Form, Ex. 11; Lahey Clinic Progress Notes of Joseph Rothchild, M.D., Ex. 12.)

3.   In December 2000, Veronesi sought treatment at the emergency room at the Lahey Clinic on two separate occasions. On December 13, 2000, Veronesi was admitted to the

---

pursuant to M.G.L. c. 93A …" he makes no mention whatsoever of his c. 93A claim in his Memorandum in Support of his Motion for Summary Judgment. To the extent that the Court construes Parziale's Motion as a motion for summary judgment on both his contract and c. 93A claims, AHL opposes Parziale's Motion as to both claims.

[2] The reference "Ex. __" refers to documents appended as exhibits to the Affidavit of Hobart F. Popick, which in turn is attached to Defendant's Response to Plaintiff William Parziale's Statement of Material Facts of Record and Statement of Additional Undisputed Facts.

emergency room complaining of right flank pain, dizziness, cold sweats, dysuria,[3] and urinary frequency. (See Lahey Clinic Emergency Department Admission Record, Ex. 7.) Following Veronesi's visit on December 13, Dr. John McCarthy's prognosis was "probable cystitis."[4] (See Progress Notes of Dr. John McCarthy, Ex. 8.) Four days later, on December 17, 2000, Veronesi returned to the emergency room at the Lahey Clinic, complaining of right flank pain and vomiting. (See Lahey Clinic Emergency Department-Patient Flow Sheet, Ex. 9).

    4.    Veronesi contacted Dr. Pazirandeh at the Lahey Clinic on June 15, 2001, complaining of "falling asleep at the wheel." (See Lahey Clinic Ambulatory Order Form, Ex. 11).

    5.    Veronesi visited the office of Dr. Joseph Rothchild on July 12, 2001, complaining of fatigue, chest pain, difficulty swallowing, and regurgitation. (See Lahey Clinic Progress Notes of Joseph Rothchild, M.D., Ex. 12.) Several diagnostic tests were performed, including an HIV screen, to which Veronesi specifically consented. (See Lahey Clinic Ambulatory Order Form, Ex. 13; Lahey Clinic Consent to HIV Laboratory Test, Ex. 14; Lahey Clinic Department of Laboratory Medicine Final Event Report, Ex. 15.) Dr. Rothchild's assessment noted that he would "consider various infections including hepatitis, HIV, and mono." (See Lahey Clinic Progress Notes of Joseph Rothchild, M.D., Ex. 12.) An x-ray was also taken, which revealed "fullness in the AP window," and a CT scan was recommended to "exclude the possibility of adenopathy."[5] (See Lahey Clinic Diagnostic Radiology Requisition M965236, Ex. 16.)

---

[3] Dorland's Illustrated Medical Dictionary defines "dysuria" as "painful or difficult urination." Dorland's Illustrated Medical Dictionary at 521.

[4] Dorland's Illustrated Medical Dictionary defines "cystitis" as "inflammation of the urinary bladder." Id. at 420.

[5] Dorland's Illustrated Medical Dictionary defines "adenopathy" as "enlargement of the glands, especially of the lymphatic glands." Id. at 28.

6. At 5:10 p.m. on July 25, 2001, Veronesi was again admitted to the emergency room at the Lahey Clinic, complaining of difficulty breathing and hoarseness. (See Lahey Clinic Emergency Department Admission Record, Ex. 18.) Veronesi's medical records also show that she had been experiencing difficulty breathing for the three weeks prior, and that she had experienced hoarseness since Sunday, July 22. (See Lahey Clinic Consultation Form, Ex. 19.) Indeed, Veronesi had "lost her voice" by the time she had appeared at the emergency room. (See Emergency Medicine notes of Tristam C. Dammin, M.D., Ex. 20.)

7. Veronesi made no mention of any of her visits to the Lahey Clinic on her application. (See American Heritage Life Insurance Company Policy Specifications, AHL 00052, Ex. 2.) Specifically, Question No. 14, Part 2 (a) on the Policy application inquired: "[h]as any person to be insured been examined or treated at a hospital or other medical facility (within the last 5 years) or are they currently under the care of a doctor?" (Id.) Veronesi responded "no." (Id.)

8. Veronesi likewise made no mention of her x-ray or other diagnostic tests that she had on July 12, 2001, or of the fact that Dr. Rothchild had recommended a CT scan be taken. (Id.) Question No. 14, Part 2 (b) inquired: "[h]as any person to be insured … been advised to have or contemplate having any diagnostic test, treatment or surgery?" (Id.) Again, Veronesi answered "no." (Id.)

9. Veronesi was likely aware that a CT scan had been recommended by Dr. Rothchild before her July 25, 2001 emergency room visit. Dr. Christine Williamson, who operated on Veronesi after her July 25 emergency room visit, noted in her Discharge Summary that Veronesi "had a chest x-ray ordered by her primary care physician … mid-July of this year, which showed some question of adenopathy in the chest … <u>she was planning to have a CT scan</u>

of the chest to investigate this." (See Lahey Clinic Discharge Summary, Ex. 10) (emphasis added).

10. It is not clear exactly when Veronesi completed the application. Robert Ehrlich ("Ehrlich"), an independent agent who solicited Veronesi's application for the Policy, testified in his deposition that he met with Veronesi sometime on or before July 25, 2001. (Ehrlich Dep. at 105:14-17, Ex. 3.) However, Ehrlich had unequivocally stated in writing to AHL during its investigation of Parziale's claim that he visited Veronesi's home on the evening of July 25, 2001, sometime after 7:00 p.m. (Id. at 76:5-8; Fax from R. Ehrlich to S. Marchy, p. 3, Ex. 4.) Moreover, Ehrlich stated in his deposition that he often solicited policies at applicants' homes in the night hours. (Ehrlich Dep. at 70:8-15, Ex. 3.) Nonetheless, Ehrlich testified in his deposition that he did not remember when he solicited Veronesi's application for the Policy. (Id. at 76:17-21.)

11. By contrast, Parziale testified in his deposition that Ehrlich solicited the Policy application on July 25, 2001, which he noted was the same day that Veronesi went to the emergency room at the Lahey Clinic. (Parziale Dep. at 78:21-79:11, Ex. 17.)

12. Parziale did not accompany Veronesei to the emergency room on July 25, 2001, but met her there later that evening. (Parziale Dep. at 76:12-15, Ex. 17.)

13. Veronesi worked as an office manager at Connaughton Construction forty hours per week through February 26, 2002. Veronesi's regular hours were 9:00 a.m. to 5:00 p.m. Veronesi's payroll records for the week of July 24, 2001 show that she worked a full forty-hour week, without taking any sick or vacation time. (Plaintiff's Ex. C; Letter from S. Marchy to Connaughton Construction, AHL 00175 & 179, Ex. 5.)

14. The results of Veronesi's CT scan performed at the emergency room on July 25, 2001 revealed a "hilar mass with anterior mediastinal mass."[6] (See Emergency Medicine notes of Tristam C. Dammin, M.D., Ex. 20.) Veronesi's preliminary diagnosis was lymphoma and Hodgkin's disease, and she was scheduled to be seen the following day for "a workup which may well involve a Chamberlain procedure." (Id.) Veronesi's medical records also indicate that her preliminary diagnosis and treatment options were discussed with her and her "significant other." (Id.)

15. Just over seven months later, on March 4, 2002, Veronesi died. The primary cause of her death was "mediastinal large cell carcinoma."[7] (Plaintiff's Ex. F.)

16. That afternoon, Parziale made a claim under the Policy via telephone. (Parziale Dep. at 116:10-21, Ex. 17.)

17. Parziale submitted a Claimant's Statement on or about March 14, 2002. (Id. at 117:3-19; American Heritage Life Claimant's Statement, Ex. 21.)

18. Parziale's Claimant's Statement failed to disclose all of the doctors who had treated Veronesi during the past five years, even though he was aware of Veronesi's other physicians because he had accompanied Veronesi to her chemotherapy appointments. (Parziale

---

[6] Dorland's Illustrated Medical Dictionary defines "hilar" as "pertaining to a hilum." "Hilum," in turn, is defined as: "a general term for a depression or pit at that part of an organ where the vessels and nerves enter." "Mediastinal" is defined as: "of or pertaining to mediastinum." "Mediastinum," in turn is defined as: "1. a median septum or partition. 2. [NA] the mass of tissues and organs separating the two pleural sacs … it contains the heart … the bases of the great vessels, the trachea and bronchi, esophagus, thymus, lymph nodes, thoracic duct … and other structures and tissues." Dorland's Illustrated Medical Dictionary 767, 998 (28th ed. 1994).

[7] Dorland's Illustrated Medical Dictionary defines "carcinoma" as: "a malignant new growth made up of epithelial cells tending to infiltrate the surrounding tissues and give rise to metastases." In turn, "large cell carcinoma" is defined as: "a bronchogenic tumor of undifferentiated (anaplastic) cells of large size; it may be a variety of squamous cell carcinoma of the lung that has undergone further dedifferentiation." Id. at 265-66.

Dep. at 119:3-12, Ex. 17.) In addition, Parziale also had accompanied Veronesi on several other appointments, including Veronesi's visit to Dr. McCarthy on December 13, 2000, to the emergency room on July 25, 2001, and to Dr. Williamson on July 26 and August 23, 2001. (See Lahey Clinic Emergency Department-Patient Flow Sheet, Ex. 9; Lahey Clinic Progress Notes, Ex. 22; Radiation Therapy Note, Ex. 23.)

19.   AHL responded to Parziale's inquiries during the investigation, speaking to him on the telephone on several occasions. (Parziale Dep. at 124:10-22, Ex. 17.) AHL also corresponded regularly with Parziale to inform him of the status of the claim. (See Letter from S. Marchy to W. Parziale dated May 7, Ex. 24; Letter from S. Marchy to W. Parziale dated November 1, 2002, Ex. 25; Letter from S. Marchy to W. Parziale dated December 4, 2002, Ex. 26.) Although AHL requested that Parziale provide Veronesi's complete medical records, the process was delayed because AHL was required to obtain a medical release from Veronesi's executrix, Karin Ouellette. (See Letter from S. Marchy to K. Ouellette dated December 10, 2002, Ex. 27.) As a result, AHL did not have Veronesi's complete medical records until sometime after December 10, 2002. (Id.)

20.   By letters to Ms. Ouellette and to Parziale dated March 7, 2003, AHL denied Parziale's claim and rescinded the Policy having determined that Veronesi had incorrectly responded to several questions on the Policy application. (See Plaintiff's Ex. H, Letter from S. Marchy to K. Ouellette dated March 7, 2003, Ex. 28.) Specifically, AHL stated that because Veronesi had failed to disclose her July 12, 2001 visit to Dr. Rothchild, and because she stated that she had not "been examined or treated at a hospital or other medical facility (within the last five years)," she had made a material misrepresentation on the Policy application with regard to her medical history. (Id.) AHL further stated that had Veronesi correctly informed AHL of her

medical history, that AHL would not have issued the Policy.  (Id.)  (See also Affidavit of N. Crawford, ¶ 11.)

21.  In response to AHL's Interrogatory No. 5 ("State the basis for your contention in the Complaint that 'no reasonable offer of settlement has been made' by AHL") Parziale stated, in full:  "My attorney sent a 30-day demand letter, pursuant to M.G.L. c. 93A, to AHL.  The only response from AHL was to deny liability.  No offer of settlement was made."  (See Plaintiff's Answers to Interrogatories, Ex. 29.)

22.  The only purported symptom of emotional distress that Parziale alleges is "disbelief" that his claim under the Policy was denied.[8]  (See Parziale Dep. at 126:23-127:8, Ex. 17.)  Parziale has never received treatment of any kind for his alleged emotional distress.  (Id. at 127:9-15.)

### III.  ARGUMENT

#### A.  Summary judgment standard

"The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Robinson v. Bodoff, Schechtman Levy & Halperin, 355 F.Supp. 2d 578, 581-82 (D. Mass. 2005), quoting Fed. R. Civ. P. 56(c).  "The moving party is said to bear both the initial burden of production and the ultimate burden of persuasion on the motion."  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citation omitted).

---

[8] Parziale makes no mention whatsoever of his emotional distress claim in his Motion. To the extent that the Court construes Parziale's Motion as a motion for summary judgment on his emotional distress claim, however, AHL opposes the Motion on the grounds that Parziale has demonstrated no basis in fact or in law for his claim, and accordingly, he is not entitled to summary judgment.

"A nonmoving party, even though having the ultimate burden at trial, may indeed have no obligation to offer evidence supporting its own case unless the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact." Id. at 133 (citation omitted). A dispute is genuine "if it may reasonably be resolved in favor of either party." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Robinson, 355 F.Supp. 2d at 582, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor." Robinson, at 582, citing O'Connor v. Steeves, 994, F.2d 905, 907 (1st Cir. 1993). In reviewing a motion for summary judgment, "the court may not take into account the credibility of witnesses, resolve evidentiary conflicts, nor ponder the weight of the evidence." St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis, 262 F.3d 53, 61 (1st Cir. 2001).

Here, Parziale fails to meet his burden of demonstrating that there is no issue of material fact, and accordingly, his Motion must be denied.

### B. The Court may not consider Parziale's documents that would be inadmissible at trial.

It is well settled that "documents supporting or opposing summary judgment must be properly authenticated. To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e). … [S]worn or certified copies of all papers referred to in the affidavit must be attached." Carmona, 215 F.3d at 131 (citations and internal quotes omitted) (emphasis added). "The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." Robinson, 355 F.Supp. 2d at 582 (citation omitted) (emphasis added).

Parziale has made no attempt to authenticate any of the documents he relies upon in his Motion for summary judgment, and therefore, they may not be considered by the Court. See Carmona, 215 F.3d at 131 (vacating award of summary judgment where moving party's exhibits were "simply appended … unsworn, [and] uncertified … ."); see also Robinson, 355 F.Supp. 2d at 582 (striking all exhibits that were submitted without affidavits and were not self-authenticating). Although Parziale's failure to submit authenticated documents alone permits the Court to deny his Motion, even if the Court considers Parziale's unauthenticated documents, Parziale is not entitled to summary judgment because he cannot demonstrate an absence of any issue of material fact.

### C. Parziale has failed to meet his burden of demonstrating an absence of any genuine issue of material fact

Under Massachusetts law, an insurer is not liable for a claim made on a life insurance policy issued without a medical examination if the "statements made in the application as to the age, physical condition and family history of the insured … were willfully false, fraudulent or misleading." M.G.L. c. 175, § 124 (emphasis added).[9] Under the statute, "[t]he question whether the defendant insurer has met its burden of proving the statements 'willfully false, fraudulent or misleading' is not to be determined on summary judgment." Robinson v.

---

[9] Parziale cites to Davidson v. Massachusetts Casualty Ins. Co., 325 Mass 115, 119 (1949) and Rappe v. Metropolitan Life Ins. Co., 322 Mass. 438, 440 (1948) for the proposition that it is AHL's burden to prove Veronesi had an "actual intent to deceive." Parziale's contention is incorrect. Both the Davidson and Rappe cases were decided under M.G.L. c. 175, § 186, which provides: "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss." Id. (emphasis added). The parties agree that the Policy was issued without a medical examination, and accordingly, M.G.L. c. 175, § 124 controls the outcome of this case. See Robinson v. Prudential Ins. Co. of America, 56 Mass. App. Ct. 244, 246 (2002). Therefore, the "intent to deceive" standard does not apply.

Prudential Ins. Co. of America, 56 Mass. App. Ct. 244, 251 (2002) (emphasis added). See also Paroulidis v. Commerce Ins. Co, No. 95-01874, 1997 Mass. Super. LEXIS 449 *6 (March 28, 1997) ("When intent is at the core of a controversy, summary judgment seldom lies.") (citation omitted). Here, although AHL bears the burden of proving that Veronesi's statements on the Policy application were false, fraudulent or misleading, Parziale has failed to carry his burden of demonstrating an absence of any issue of material fact, and therefore he is not entitled to summary judgment. See Carmona, 215 F.3d at 133.

Parziale has failed to show that there is an absence of a genuine issue of material fact as to at least three issues: (1) Veronesi's representation on the Policy application that she had not seen a doctor in the past five years; (2) Veronesi's representation on the Policy application that she had not been advised to have or contemplate having any diagnostic test, treatment or surgery; and (3) the time and date the application was solicited. Each of these issues will be addressed in turn.

> **1.     There is an issue of material fact as to Veronesi's representation on the Policy application that she had not seen a doctor in the past five years**

Veronesi responded "no" to Question 14, Part 2 (a) on the AHL Policy application, which asks: "[h]as any person to be insured been examined or treated at a hospital or other medical facility (within the last 5 years) or are they currently under the care of a doctor?" (See American Heritage Life Insurance Company Policy Specifications, AHL 00052, Ex. 2.) Parziale cannot demonstrate that there is no issue of material fact with respect to Veronesi's response to Question 14, Part 2 (a) on the Policy application.

First, there can be no dispute that Veronesi's response was false. Veronesi visited the Lahey Clinic on at least three separate occasions (December 13 and 17, 2000, and July 12, 2001)

during the several months preceding her application for the Policy.  Thus, Veronesi had been "treated at a hospital or other medical facility" within the previous five years, and likely was also "under the care of a doctor" at the time she applied for the Policy.  Veronesi must have been aware that her answer was false when she completed the application because she had been to see Dr. Rothchild just over a week earlier on July 12, 2001.  Indeed, Veronesi's medical records show that her symptoms of difficulty breathing and hoarseness had plagued her throughout the month of July, culminating on July 25 when she sought immediate medical attention for those symptoms.[10]  (See Lahey Clinic Progress Notes of Joseph Rothchild, M.D., Ex. 12; Lahey Clinic Ambulatory Order Form, Ex. 13; Lahey Clinic Consent to HIV Laboratory Test, Ex. 14; Lahey Clinic Emergency Department Admission Record, Ex. 18.)  Therefore, because Veronesi must have known that she was making a false statement on the Policy application, there is an issue of material fact as to whether Veronesi willfully or fraudulently made the statement.

Furthermore, it cannot be said as a matter of law that Veronesi's response to Question 14, Part 2 (a) was not also misleading within the meaning of M.G.L. c. 175, § 124.  Indeed, the undisputed facts show that Veronesi's statement did in fact mislead AHL to believe Veronesi's health was other than she represented it to be, and that AHL was thereby induced to issue the Policy.  It is beyond dispute that had Veronesi correctly answered this question, AHL would not have issued the Policy. (See Affidavit of Neil Crawford at ¶ 11.)

---

[10] These symptoms cannot, as a matter of law, be said to fall into the category of "colds, flu, minor injuries, normal childbirth, seasonal hay fever, appendicitis or tonsillitis" that were specifically excluded from the scope of Question 14, Part 2 on the Policy application.  (See American Heritage Life Insurance Company Policy Specifications, AHL 00052, Ex. 2.)

> **2.   There is an issue of material fact with respect to Veronesi's representation on the Policy application that she had not been advised to have or contemplate having any diagnostic test, treatment or surgery**

Veronesi responded "no" to Question 14, Part 2 (b) on the Policy application, which asks: "[h]as any person to be insured … been advised to have or contemplate having any diagnostic test, treatment or surgery?" (See American Heritage Life Insurance Company Policy Specifications, AHL 00052, Ex. 2.) Parziale cannot demonstrate that there is no issue of material fact as to Veronesi's response to this question. First, Veronesi's medical records show that her response was false. There is no dispute that Veronesi was advised to have various diagnostic tests performed, including a chest x-ray and several blood tests, when she visited Dr. Rothchild on July 12, 2001. Veronesei was made specifically aware of the need for an HIV screen, as evidenced by her signature on the HIV screen consent form. (See Lahey Clinic Consent to HIV Laboratory Test, Ex. 14.)

In addition, Veronesi's medical records show that Dr. Rothchild had recommended that a CT scan be performed based on the results from her chest x-ray, and that Veronesi likely was aware of the need for a CT scan. On July 30, 2001, Dr. Christine Williamson, who operated on Veronesi after her July 25 emergency room visit, noted that Veronesi "had a chest x-ray ordered by her primary care physician … mid-July of this year, which showed some question of adenopathy in the chest … <u>she was planning to have a CT scan of the chest to investigate this</u>." (See Lahey Clinic Discharge Summary, Ex. 10) (emphasis added). Accordingly, Veronesi's response to Question 14, Part 2 (b) was literally false, and Parziale has failed to show that there is no genuine issue of material fact as to Veronesi's intent in making this statement.

Finally, as discussed above, it cannot be said as a matter of law that Veronesi's response was not also misleading within the meaning of M.G.L. c. 175, § 124. Indeed, the undisputed

facts show that Veronesi's statement did in fact mislead AHL to believe Veronesi's health was other than she represented it to be, and that AHL was thereby induced to issue the Policy. (See Affidavit of Neil Crawford at ¶ 11.)

### 3. There is an issue of material fact as to when the application was solicited

The application is dated July 25, 2001. That same day, Veronesi was admitted to the emergency room at 5:10 p.m. It is undisputed that a CT scan performed during Veronesi's emergency room visit revealed that she was gravely ill due to a malignant tumor in her lung. It is beyond dispute that if Veronesi had completed the application <u>after</u> her July 25, 2001 emergency room visit, her negative responses to the AHL Policy application questions regarding her previous medical history would permit a finding in favor of AHL. See <u>Doulames v. Prudential Ins. Co.</u>, 1 Mass. App. Ct. 871 (1974) (jury properly found for defendant insurer where insured had incorrectly answered several application questions which, if answered correctly, would have revealed that he had been admitted to a hospital a year earlier for diagnostic tests that revealed heart disease.) Here, Parziale has failed to show an absence of material fact as to when the application was completed because Ehrlich's deposition testimony and Parziale's deposition testimony cannot be reconciled with Veronesi's employment records.

Ehrlich had previously informed AHL in a written statement that he had solicited the application the <u>evening</u> of July 25, 2001, at approximately 7:00 p.m. (See Ehrlich Dep. at 76:5-8, Ex. 3; Fax from R. Ehrlich to S. Marchy, p. 3, Ex. 4.) At his deposition, Ehrlich disavowed this statement, asserting a lack of memory as to when he solicited the application.[11] (Ehrlich

---

[11] This discrepancy between Ehrlich's previous statement to AHL and his deposition testimony raises an issue of Ehrlich's credibility. It is well settled that "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." <u>Woodman v.</u>

Dep. at 76:17-21, Ex. 3.) He stated that it was possible that he solicited the application as many as four days earlier and dated the application the date of mailing, but he could not specifically recall whether he had done so. (Id. at 67:1-68:10.) By contrast, Parziale testified that Ehrlich solicited the Policy application on July 25, 2001 in the afternoon. (Parziale Dep. at 78:21-79:11, Ex. 17.)

However, neither Parziale's testimony nor Ehrlich's testimony can be reconciled with Veronesi's employment records, which show that Veronesi's working hours were 9:00 a.m. to 5:00 p.m., and that she worked a full day each working day of the week of July 23, 2001, without taking any sick or vacation time. (Plaintiff's Ex. C, Letter from S. Marchy to Connaughton Construction, AHL 00175 & 179, Ex. 5.) Both Ehrlich and Parziale testified that Veronesi applied for the Policy herself. (Ehrlich Dep. at 85:7-86:10; Ex. 3; Parziale Dep. at 106:11-22, Ex. 17.) Parziale testified that the application was solicited around 3:30 p.m. (Parziale Dep. at 79:6-11, Ex. 17.) Despite his previous statements to the contrary, Ehrlich also testified in his deposition that he solicited the application in the afternoon. (Ehrlich Dep. at 61:8-13, Ex. 3.) This simply cannot be reconciled the fact that Veronesi was working full time each day, during business hours, the week of July 24. Accordingly, there is an issue of material fact as to when the application was completed, and this issue must be decided at trial.

The Court can infer, given the circumstances of Veronesi's purchase of the Policy, that she was aware that her statements on the application concerning her medical history were false. Robinson, 355 F.Supp. 2d at 582, citing O'Connor v. Steeves, 994, F.2d 905, 907 (1st Cir. 1993) ("the court must view the entire record in the light most hospitable to the non-moving party and

---

Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir., 1995). Accordingly, the issue of Ehrlich's credibility is an issue of material fact and Parziale is not entitled to summary judgment.

indulge all reasonable inferences in that party's favor"); <u>Doughty v. Monumental Life Ins. Co.</u>, No. 02-1608, 2003 U.S. Dist. LEXIS 10560 at *21 (E.D. La. June 11, 2003) ("courts look to the surrounding circumstances indicating the insured's knowledge of the falsity of the representation made in the application."). Given Veronesi's recent visits to Dr. Rothchild and her breathing problems and hoarseness that persisted throughout July 2001, it is reasonable to infer that Veronesi knew she was not well when she completed the application. Moreover, given Dr. Williamson's notes in Veronesi's file from July 30, 2001, it is reasonable to infer that Veronesi was aware of the need for a CT scan to follow up on her July 13, 2001 x-ray, and that Veronesi had scheduled an appointment to have a CT scan performed.

In sum, Parziale has failed to demonstrate an absence of any issue of material fact with respect to Veronesi's statements on the application concerning her medical history, as well as when the application was completed.[12] Furthermore, given that AHL would not have issued the Policy had Veronesi correctly represented her medical history, it cannot be said as a matter of law that Veronesi's statements were not also "misleading" within the meaning of M.G.L. c. 175, § 124. Accordingly, all of these issues are material facts in dispute and therefore, Parziale's Motion must be denied.

### D. Parziale has utterly failed to meet his burden on his claim under c. 93A

In the final paragraph of his Motion, Parziale requests that the court grant him summary judgment, and "award him fees and costs associated with bringing this action as well as treble damages, pursuant to M.G.L. c. 93A, because defendant knew or should have known that the

---

[12] All of these issues are material in that they "might affect the outcome of the suit under the governing law." <u>Robinson v. Bodoff, Schechtman Levy & Halperin</u>, 355 F.Supp. 2d at 582, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

-16-

proceeds of the policy should have been paid to Parziale."[13] Massachusetts law provides that "failing to effectuate prompt, fair and equitable settlements of claims <u>in which liability has become reasonably clear</u>" is an "unfair or deceptive act[] or practice[] in the business of insurance" within the meaning of c. 93A.  M.G.L. c. 93A, § 9, M.G.L. c. 176D, § 3(9)(f) (emphasis added).  Even if Parziale was correct that the Policy provides for coverage of his claim (which, of course, AHL contests), it is well-settled that denying liability based upon a "plausible, although ultimately incorrect, interpretation" of an insurance policy is <u>not</u> a violation of c. 93A or c. 176D.  <u>See</u>, <u>e.g.</u>, <u>Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.</u>, 406 Mass. 7, 15 (1989); <u>see also</u> <u>Eigerman v. Mt. Airy Ins. Co.</u>, 1996 U.S. Dist. LEXIS 14942 (D. Mass., 1996).

The sole basis that Parziale alleges in support of his c. 93A claim is that AHL declined to pay his claim or make an offer of settlement.  (Parziale Ans. Int. No. 5, Ex. 29.)  As the Supreme Judicial Court of Massachusetts made clear in <u>Boston Symphony Orchestra</u>, a mere refusal to make an offer of settlement where liability is not reasonably clear does not support a claim for unfair settlement practices under c. 93A.  406 Mass. at 15.  Parziale has alleged <u>no</u> facts to support his claim that AHL violated any aspect of M.G.L. c. 93A or 176D.  Indeed, the record is devoid of any facts to suggest that AHL's liability with respect to Parziale's claim was <u>ever</u> "reasonably clear."  That there are several disputed issues of fact with respect to Veronesi's statements on the Policy application is further evidence that AHL's liability for Parziale's claim

---

[13] Although it is unclear whether Parziale is moving for summary judgment on his c. 93A claim, Parziale has in any event failed to present <u>any</u> evidence, much less any legal argument, that would support a finding of a c. 93A violation.  This alone is sufficient for the Court to deny his Motion.  <u>C.f.</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

is not "reasonably clear." Moreover, given that under Massachusetts law, issues of whether an insured intended to deceive an insurer generally present issues of fact for a jury to decide, Robinson v. Prudential Ins. Co. of America, 56 Mass. App. Ct. at 251, AHL's denial of liability was entirely reasonable. Accordingly, Parziale is not entitled to summary judgment on his c. 93A claim.

## IV.   CONCLUSION

For the foregoing reasons, AHL respectfully requests that this Court DENY Parziale's motion for summary judgment.

Respectfully submitted,

AMERICAN HERITAGE LIFE INSURANCE COMPANY,

By its attorneys,


/s/ Hobart F. Popick
Jonathan I. Handler (BBO # 561475)
Hobart F. Popick (BBO # 658763)
DAY, BERRY & HOWARD LLP
260 Franklin Street
Boston, Massachusetts 02110
(617) 345-4600

Dated: June 13, 2005

## CERTIFICATE OF SERVICE

I, Hobart F. Popick, hereby certify that on the 13th day of June, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to: Patricia Michaels, Esq., 10 Tremont St., 4th Floor, Boston, Massachusetts 02108.

/s/ Hobart F. Popick
Hobart F. Popick