UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM PARZIALE, | ) CIVIL ACTION |
| | ) |
| Plaintiff, | ) |
| vs. | ) No.: 04-11377-RBC |
| | ) |
| AMERICAN HERITAGE LIFE INSURANCE | ) |
| COMPANY, A WHOLLY OWNED SUBSIDIARY | ) |
| OF THE ALLSTATE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF WILLIAM PARZIALE'S REPLY BRIEF

Pursuant to the Scheduling Order entered by this Court, Plaintiff William Parziale

(Parziale) submits this Reply Brief in response to Defendant American Heritage Life Insurance

Company's (AHL) Opposition to Plaintiff's Motion for Summary Judgment.

Parziale disputes AHL's response to his Statement of Material Facts in that *inter alia* they

are misleading and assume facts not in evidence.[1]

In response to AHL's Statement of Additional Material Facts, Parziale states as follows:

40.    It is not clear from the record whether Veronesi ever spoke with or contacted Dr.

Pazirandeh directly; assuming, *arguendo*, that she did, her complaints were obviously not

---

[1] AHL's blanket objection based upon "numerous inadmissible and unauthorized documents" flies in the face of the fact that AHL relies upon many of the same documents in its opposition. Parziale more particularly objects to AHL's response to Para. 2 - Parziale has never been implied Ehrlich completed the application; Para. 3 - Ehrlich testified under oath at his deposition that when he had provided the information to AHL he had just been released from the hospital, where he underwent treatment for stomach cancer and chemo; that he did not remember when he took the application; that when he responded to AHL's request for information, he did not take out the application and look at it; that it wasn't until he received the deposition subpoena that he actually "dug through" his records to find the application. See Ehrlich Deposition Transcript attached hereto as "A" and incorporated herein. Ehrlich Tr. 76:14-77:1; 85:11-86:1; Para. 4(b) Ehrlich's testimony as to his usual practice concerning dating applications was "Do I date it at the person's home? Often times I leave it blank. Why? I'll date it the day I mail it." Ehrlich Tr. 66:18-67:7; Para. 7 Ehrlich testified he gave Veronesi the application, told her to fill it out. "You know yourself better than I do." He did not explain anything more specifically. Ehrlich Tr. 86:5:13; AHL refers to a specific instance regarding a prior case -", Ehrlich was asked: Well, when you say you didn't fill out the application, was that unusual? No, I often did it,", i.e., often *did not* fill out the application. Ehrlich Tr. 31:22-32:4; Para. 16 - A baseless objection -- the question was quoted verbatim; Para. 18 - AHL has asserted Veronesi made certain misrepresentations on the application as to her state of health calling into question her character, therefore Ouellette's statement about Veronesi's character is admissible under Fed.R.Evid. 405; Para. 23 - AHL has offered no evidence as to the source of the information contained in Dr. Williamson's notes about Veronesi's x-rays and CT-scans. The likelihood is that Dr. Williamson obtained the information by reviewing Veronesi's medical history which contained the radiology report as well as an undated order for a CT-scan. It should also be noted that Dr. Williamson's record is dated July 30, 2001, after Veronesi completed the application and after she was diagnosed. Moreover, AHL's assertion that the information "suggests" Veronesi was aware of the x-ray results and that she had planned to have a CT scan does meet AHL's burden of proof; Paras. 25-26 refer to an exhibit that is attached to this Reply Brief. The exhibit has been attested to by Dr. Rothchild and meets the summary judgment standard as it is based upon Dr. Rothchild's own personal knowledge.

considered to be serious in nature as there is no record of any associated doctor visit or prescriptions, nor any recommendation to follow-up with the doctor for the problem.

41.    Contains presumptions not supported by the evidence. The x-ray report dated July 13, 2001, clearly states there was no evidence of hilar mass or mediastinal adenopathy. The "Impression" section reads, in part: 1. *No acute abnormality*; 2. Slight AP window fullness, most likely a *normal variant* . . . (emphasis added). The radiologist suggests a CT scan if no films were available for comparison. There were no films. See copy of x-ray report dated July 13, 2001 attached hereto marked "B" and incorporated herein. There is no evidence that Veronesi was ever informed of the results of these x-rays.

43.    Addresses in detail a visit to Lahey Clinic that, based upon all the evidence, occurred after Veronesi completed the application for life insurance.

44.    Ehrlich testified at deposition that most of the time he would "try to see them [clients]in the early afternoon." He went on to say he has eye problems that affect his driving and that it is easier for him to drive in the daylight. Ehrlich Tr. 70:16-71:6.

50.    Parziale testified that he did not disclose Dr. Rothchild because he did not know about him; that he named the doctors in the intensive care unit who cared for Veronesi during her final illness; that when he responded to AHL he was distraught. See copy of Parziale's deposition transcript annexed hereto, marked "C" and incorporated herein. Parziale Tr. 118:12-119:14. AHL could easily have discovered the names of all of Veronesi's doctors with the information Parziale provided because Veronesi elected to receive all treatment at Lahey Clinic. A request for records from Lahey Clinic would have revealed this information.

The Statement of Facts contained in Section II of AHL's Opposition to Plaintiff's Motion for Summary Judgment is, for the most part, a repetition of the unsupported facts and assumptions contained in AHL's Response to Parziale's Statement of Material Facts.[2]

## ARGUMENT

### A. All Documents Submitted with Parziale's Motion for Summary Judgment Will Be Admissible at Trial.

Although Fed.R.Civ.P. 56 (e) allows a party to submit affidavits in support of its summary judgment motion, it does not require that all supporting material be submitted in

---

[2]Parziale previously responded in detail to the same or similar facts and assertions raised by AHL in its response to Parziale's Statement of Material Facts of Record and Statement of Additional "Undisputed" Facts. See N. 1, supra. In the interest of brevity, Parziale incorporates his objections to Section II, Paras. 4, 6, 8, 9, 10, 11, 13, 18 of AHL's Opposition to Parziale's Motion for Summary Judgment.

affidavit form: "[r]ather the court may consider any material that would be admissible or useable at trial." *Aguilera v. Cook County Police & Corrs. Merit Bd.,* 760 F.2d 844, 849 (7th Cir. 1985) (citation omitted). Plaintiff's motion for summary judgment contained exhibits A through T. With the exception of Exhibits B, G and J (portions of depositions transcripts -- clearly admissible, see Fed.R.Civ.P. 32(a)), all of the medical records were provided to plaintiff by defendant (evidenced by the Bates stamp affixed to the documents) and many, if not all, of plaintiff's exhibits are the same exhibits relied upon by defendant in its opposition. Exhibit O was the singular exception and the most damaging to defendant's case.

Exhibit O to Parziale's initial pleading is a copy of letter from Dr. Rothchild addressing what, if any, information he provided to Ms. Veronesi when she was seen at his office on July 12, 2001. (An attested to copy of the same letter from Dr. Rothchild is attached hereto, marked "D" and incorporated herein). Dr. Rothchild was identified as a witness who will testify at trial. Exhibit "D" is sworn to under the penalties of perjury; if this matter were to go to trial, Dr. Rothchild would testify in accordance with the information contained in Exhibit "D."

## B. AHL Has Failed to Demonstrate Any Genuine Issue of Material Fact and Summary Judgment Is Warranted.

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Hinchey v. Nynex Corp.,* 144 F.3d 134 (1st Cir. 1998). "[S]ummary judgment is not precluded by just any factual quibble: 'The evidence manifesting the dispute must be "substantial," going beyond the allegations of the Complaint.'" *Dykes v. DePuy, Inc.,* 140 F.3d 31 (1st Cir. 1998) quoting *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir. 1975). AHL points to three matters that it asserts are genuine issues of material fact, each of which is addressed individually below. These purported issues of material fact, when viewed in the light of the applicable statutory language, do not create any genuine issue of material fact. "A fact is material [for purposes of summary judgment] if its resolution might effect the outcome of the case under the controlling law." *Cochran v. Quest Software, Inc.,* 328 F.3d 1, 6 (1st Cir. 2003).

1.    The representation made by Veronesi on her application that she had not seen a doctor in the five year period prior to completing the application. The application speaks for itself. Indeed, Veronesi answered "no" to that part of Question 14 concerning any care or treatment she may have received within 5 years prior to completing the application. "Actual intent to deceive is not to be presumed. It is a matter to be proved." *McDonough v.*

3

*Metropolitan Life Ins. Co.,* 228 Mass. 450, 453, 117 N.E. 2d 836 (1917). Veronesi's negative answers are material only if AHL can prove the answers were wilfully false, fraudulent or misleading. AHL cannot meet this burden for the following reasons:

Question 14 is patently ambiguous. It reads: "14. "**NON-MEDICAL QUESTIONNAIRE** (Exclude history of: colds, flu, minor injuries, normal childbirth, seasonal hay fever, appendicitis or tonsillitis)." See copy of application annexed hereto, marked "E" and incorporated herein. After informing the applicant that he or she is about to answer a "non-medical" question, the question proceeds to ask what appears to be medical questions, leaving the applicant, in this case Veronesi, in a quandary and having to decide what sort of "non-medical information" is being sought and what information, pursuant to the instructions on the application itself, are minor or routine and should be excluded. There is ample evidence to support the fact that in July 2001 Veronesi believed she had "mono" as she had had twice in the past. See Hematology Report dated 7/26/01 annexed hereto, marked "F" and incorporated herein. AHL has produced no evidence that Veronesi, a previously healthy, 32 year old woman, had any reason to believe she was gravely ill or that any of the visits to Lahey Clinic prior to completing the application were for anything other than minor issues. G.L. c. 175, § 124 requires that AHL prove that Veronesi's statements were wilfully false, fraudulent or misleading.[3] AHL has failed to meet its burden and summary judgment is warranted.

2.       That Veronesi's negative response to the question, "[h] as any person to be insured . . . been advised to have or contemplate having any diagnostic test, treatment, or surgery?" AHL then massages the language of this question, clearly prospective -- "been advised to have or contemplate having . . . " in an attempt to make it retrospective and, to cloud the issue even more, attaches documents pertaining to procedures that took place before Veronesi completed the application.

AHL then goes on to make the bald assertion that Dr. Rothchild "recommended a CT-scan be performed" and that Veronesi was "likely aware of the need of a CT-scan." (Defendant's Memorandum, p. 13, para. 2). This is simply not true. Dr. Rothchild has stated that *he did not speak with Veronesi regarding a possible diagnosis, and that the order for a CT-scan contained in his records is undated;* that he "presumes" Dr. Bilello spoke with her about the need for a CT-

---

[3] "In any claim arising under a policy issued in the commonwealth by any life insurance company, without a previous medical examination, the statements made in the application as to the age, physical condition and family history of the insured shall be held valid and binding on the company; but the company shall not be debarred from *proving* as a defense to such claim that said statements were *wilfully false, fraudulent or misleading."* G.L. c. 175, § 124 (emphasis added).

4

scan, "but I have no documentation of this." See Ex. "D." A CT-scan is not referenced anywhere in the handwritten notes or the typed summary of Veronesi's July 12, 2001 visit. See copy of notes and summary of July 12, 2001 visit attached hereto, marked "G" and incorporated herein. As a matter of law, there is no evidence that the statements contained on Veronesi's application were wilfully false, fraudulent or misleading. AHL has failed to meet its burden of proof and summary judgment is warranted.

3. AHL suggests that any discrepancy concerning the date and time the application was solicited is somehow an issue of material fact. Parziale acknowledges a discrepancy but denies that it creates a genuine issue of material fact for summary judgment purposes. It is nothing more than a mere "quibble" which has no effect on the outcome of this case. The fact that the date and time the application was taken cannot be established with certainty is simply not material. "To defeat a motion for summary judgment, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. "Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). There were three people present when the application was taken -- Robert Ehrlich, who has testified under oath that he has no memory as to the exact date the application was taken; William Parziale, who has testified under oath that he has a memory that the application was taken on July 25, 2001; and Maryann Veronesi. Whether the application was taken on July 21, 22, 23, 24 or July 25, 2001 has no effect on the outcome of this case. It does not change the real issue in the case, which is whether AHL can prove that the negative responses on Veronesi's application were *wilfully* false, fraudulent or misleading when it was completed. (emphasis added). The answer is a resounding "No."

## C. The Affidavit of Neil Crawford Is Not Based Upon Personal Knowledge and Should Be Stricken.

Affidavits in support of motions for summary judgment are required to "be made on personal knowledge, . . . set forth such facts as will be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters therein." Fed.R.Civ.P. 56(e).

Parziale moves to strike the Affidavit of Neil Crawford (Crawford) submitted in support of AHL's opposition to Parziale's Motion for Summary Judgment. Crawford lacks personal knowledge as to the information contained in paragraphs 7,8,9,10 and 11 of his affidavit. The affidavit does not lay the proper foundation for Crawford's testimony and is based on hearsay.

## D. AHL Cannot Meet Its Burden of Proof that Veronesi's Statements Were Wilfully False, Fraudulent or Misleading.

"The purpose of G.L. c. 175, § 124 (based on the commissioner's recommendation) was to curb perceived unfair practices by insurance companies, by making it even more difficult for them to contest life insurance policies without a medical examination . . . ." *Protective Life Insurance Company v. Sullivan,* 425 Mass. 615, 682 N.E.2d 624 (1997).

"If . . . risks are taken without a medical examination, an alleged misrepresentation by the applicant -- *who in a large number of these cases is made to understand next to nothing of the statement he is asked to sign -- as to his physical condition, ought not to be permitted as a bar when a claim arises." Torres v. Fidelity and Guaranty Life Insurance Company,* 34 Mass.App.Ct. 376, 611 N.E. 2d 733 (1993) (emphasis added). Veronesi answered the questions and attempted to provide the requested information. Her answers were based upon her understanding of the questions and her belief as to her state of health as it was at that time. Considering the instruction to exclude "history of colds, flu, minor injuries, . . . ," Veronesi did not include information regarding visits to Lahey Clinic for what she believed to be minor health issues. AHL cannot point to the negative answers, ignoring the incongruity of the question, the lack of instruction from Ehrlich, and the directive to "exclude" certain information, and meet its burden of proof that the Veronesi's responses were wilfully false, fraudulent or misleading or that somehow there is an issue of material fact.

### E. Summary Judgment for the Plaintiff Is Warranted.

AHL relies upon *Robinson v. Prudential Ins. Co. of America,* 56 Mass.App.Ct. 244, 776 N.E. 2d 458 (2002) in an attempt to dissuade this Court from granting summary judgment. The facts in *Robinson* are significantly different than this case.[4] Here, there is no question that

---

[4] In *Robinson,* an applicant, in the presence of a witness, informed the agent who *took and recorded* the information on the application, that he had a history of high blood pressure and had suffered a stroke. Some time later, the agent produced a typed application, told the applicant that it was prepared based upon the information the applicant previously provided to him, had him sign it, which he did without reading it. The agent recorded the information inaccurately, providing negative answers to questions concerning heart disease, etc. The agent also told applicant the policy was to issue without a medical exam. The applicant died within the period of contestability. Prudential refused to pay the policy to the beneficiary, who brought suit. The *insurer* filed a motion for summary judgment and offered an affidavit from underwriting in support of its motion. The underwriter stated that it was underwriting's responsibility to call clients and ask the medical questions to determine whether a medical exam was

6

Veronesi answered the "non-medical" questions without assistance from Ehrlich, Parziale, or anyone from AHL. This case does not involve disclosures made but not recorded, applications signed but not read, and other facts that ultimately led the lower court to an erroneous decision in *Robinson*. The issue before this court is much more straightforward. This court is being asked to decide whether, after reviewing all of the evidence, AHL has met its burden of proving, based upon the medical records, the pleadings and deposition testimony, that Veronesi's negative responses to the non-medical question on the application were wilfully false, fraudulent or misleading. Since there is no evidence that this is so, AHL cannot meet its burden and summary judgment is warranted.

### F. Parziale Is Entitled to Damages Pursuant G.L. c. 93A.

On April 26, 2002 AHL had ample evidence that this claim should be paid. See copy of claim notes produced by AHL attached hereto, marked "H" and incorporated herein. More than one year later, on June 10, 2003 Parziale served a demand letter upon AHL pursuant to G.L. 93A, a copy of which is attached hereto marked "I" and incorporated herein. AHL failed to make any reasonable offer of settlement despite information contained in its own file that the claim should be paid.

### Request for Oral Argument

Parziale, requests, pursuant to Local Rule 7.1(d), oral argument on his Motion for

Summary Judgment.

William Parziale,
By his attorney,

Patricia Michaels (BBO#642945)
LAW OFFICE OF PATRICIA MICHAELS
10 Tremont St. 4th Fl.
Boston, MA 02108
Dated: June 20, 2005                     (617) 227-1550

---

required. When underwriting contacted the applicant, the applicant again informed her of his high blood pressure and stroke. She indicated that in light of his health history, his age and the amount of the policy, an exam was required. The Court granted summary judgment to the insurer based upon the presumption that a person signing a written instrument knows its contents and therefore the applicant's answers were wilfully false, fraudulent or misleading. The Massachusetts Appeals Court held that "[i]f as alleged, Russell informed Pumphrey of his stroke and if the circumstances of the signing were as alleged by plaintiff, it cannot be decided as a matter of law that the incorrect statements on the policy were 'wilfully false, fraudulent or misleading.' This is a jury question." *Id.* at 251-252.