## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM PARZIALE,　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　*Plaintiff,*　　　　) | |
| v.　　　　　　　　　　　　　　　　　) | Civil Action No. 04-11377-RBC |
| 　　　　　　　　　　　　　　　　　　) | |
| AMERICAN HERITAGE LIFE INSURANCE ) | |
| COMPANY, A WHOLLY OWNED　　　　) | |
| SUBSIDIARY OF THE ALLSTATE　　　) | |
| CORPORATION,　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　*Defendant.*　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |

## JOINT PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5 and the Court's May 9, 2006 Order, the parties hereby submit the following Joint Pretrial Memorandum.

**1.    Summary of the Evidence to be Presented**

　　　A.    Plaintiff's Concise Summary of the Evidence

　　　1.    On or before July 25, 2001, Robert Ehrlich (Ehrlich), acting as an agent of AHL, accepted an application for a life insurance policy insuring the life of Ms. Maryann Veronesi (Veronesi) in the amount of $99,000.  Plaintiff William Parziale (Parziale) was named as a beneficiary under the Policy.  The Policy was issued with an effective date of July 25, 2001.

　　　2.    AHL did not require Veronesi to have a medical examination prior to issuing the Policy.

　　　3.    Ehrlich did not explain the application to Veronesi.  It was his standard practice to tell applicants "Here, fill it out.  You know yourself better than I do."  Veronesi appeared to be in good health and did not complain of any symptoms of any kind when Ehrlich met with her.  Ehrlich had no reason to believe Veronesi would have been rejected if she had a physical.

　　　4.    The application contained numerous sections, including a section entitled, question 14 of the Non-Medical Questionnaire of the application is as follows:

　　　"**NON-MEDICAL QUESTIONNAIRE**.  (*Exclude history of: colds, flu, minor injuries, normal childbirth, seasonal hay fever, appendicitis or tonsillitis.*) (emphasis supplied).

**Part 2:**  Has any person to be insured:

a.  been examined or treated at a hospital or other medical facility (within last 5 years) or are they currently under the care of the doctor?

b:  been advised to have or contemplate having any diagnostic test, treatment or surgery?

Boxes were provided to the right of the question for either a "Yes" or "No" response. All of the questions on Veronesi's application were checked "No."

6.      Question 14(b) does not query whether Veronesi had had (past tense) any diagnostic tests.

7.      Veronesi's medical records indicate that on December 13, 2000 she saw Dr. John Mc Carthy for "right flank pain" believed to be cystitis, more commonly known as a bladder infection.  On July 12, 2001, two weeks before completing the application, she went to her primary care physician, Dr. Joseph Rothchild for several symptoms including fatigue, difficulty swallowing food and a dull ache in left upper chest, sore throat and earache without fever, sweats or weight loss.  Veronesi was seen by Dr. Rothchild's resident, Dr. Bilello, who ordered a blood test was performed with a normal result.  A chest x-ray was taken.  The chest x-ray report concluded "1) No acute abnormality; 2) slight AP window fullness, most likely a normal variant, prominent pulmonary artery.  However CT is recommended to exclude the possibility of adenopathy, if no old films are available for comparison (none currently available)."

8.      There is no evidence that Veronesi was informed of the results of the radiological study.

9.      Dr. Rothchild did not speak with Veronesi regarding a possible diagnosis other than discussing a possible infection and he does not know whether Dr. Bilello ever spoke with Veronesi regarding a CT scan.

10.      On July 12, 2001, Veronesi thought she had mononucleosis, just as she had had twice in the past.

11.      The handwritten notes prepared by Dr. Bilello and the transcribed note signed by Dr. Rothchild reveal that the only tests ordered on the July 12th visit were a chest x-ray and various blood tests.  Neither the handwritten notes nor transcribed notes make any reference to the need for a CT scan.  The chest x-ray and various blood tests, includin the HIV test, resulted in normal findings.  There is no evidence that Veronesi was ever told that she should have a CT scan.

12.      In the absence of any instruction or guidance from Ehrlich, Veronesi was left to determine whether what she believed to be "mono" was anything more than a routine.

13.     On July 25, 2001, after completing the application for insurance, shortly after 5:00 p.m., Veronesi went to the Emergency Room at Lahey Clinic complaining of difficulty breathing and hoarseness.   Parziale did not accompany her because Veronesi gave no indication that the visit was anything but routine.

14.     A CT-scan of Veronesi's neck and chest was done at Lahey on July 25, 2001 at 6:35 p.m.   The results of Veronesi's CT scan performed at the emergency room on July 25, 2001 revealed a "hilar mass with anterior mediastinal mass."[1]   Veronesi's preliminary diagnosis was lymphoma and Hodgkin's disease, and she was scheduled to be seen the following day for "a workup which may well involve a Chamberlain procedure."  Veronesi's medical records also indicate that her preliminary diagnosis and treatment options were discussed with her and her "significant other."

15.     Dr. Christine Williamson, who operated on Veronesi after her July 25 emergency room visit, noted in her Discharge Summary that Veronesi "had a chest x-ray ordered by her primary care physician … mid-July of this year, which showed some question of adenopathy in the chest … she was planning to have a CT scan of the chest to investigate this." Dr. Williamson does not know where she obtained the information contained in her notes.

16.     Ehrlich testified in his deposition that he met with Veronesi sometime on or before July 25, 2001.  Although Ehrlich had stated in writing to AHL during its investigation of Parziale's claim that he visited Veronesi's home sometime after 7:00 p.m. on July 25, Ehrlich testified in his deposition that he solicited the application in the afternoon.

17.     Ehrlich clarified the discrepancy between his written response to AHL and his deposition testimony by stating that when was asked the questions on September 18, 2002, he had just been released from the hospital.  He had been on chemotherapy for a month and he has no absolute memory as to when he took the application.  He stated unequivocally that he took the application in the afternoon.

18.     On February 27, 2002, Veronesi was admitted to Lahey Clinic Medical Center. The Admitting Diagnosis was "[p]neumonia, organism unspecified;" a principal diagnosis of [p]neumonia due to gram-negative bacteria."

19.     Veronesi died on March 4, 2002 at the age of 33.

20.     The Lahey Clinic Discharge Summary listed Veronesi's [d]iagnoses at death as: a) [s]eptic shock secondary to gram negative pneumonia; b) [a]dvanced large-cell mediastinal carcinoma; c) [s]tatus post full radiation therapy; d) [c]hemotherapy.

21.     The causes of death listed on the death certificate were: a) Mediastinal large cell carcinoma, approximate interval between onset and death -  5 months; b) Respiratory failure,

---

[1] A "hilar … mediastinal mass" is a mass located in the depression at that part of the trachea, bronchi, esophagus, thymus, lymph nodes, or thoracic duct where the blood vessels and nerves enter.

approximate interval between onset and death - 2 days; c) Sepsis, approximate interval between onset and death -3 days; d) Cardiac arrest, approximate interval between onset and death - 10 minutes."

22.     On the afternoon that Veronesi died, Parziale made telephoned AHL informing AHL of Veronesi's death and that he was making a claim for benefits under the life insurance policy. On March 14, 2002, he submitted a Claimant's Statement. Parziale provided AHL with the names of the doctors that had been involved in treating Veronesi during her last illness.

23.     Parziale would from time to time check the status of the application for benefits. AHL responded to Parziale's inquiries during the investigation, speaking to him on the telephone on several occasions. AHL also corresponded regularly with Parziale to inform him of the status of the claim. AHL requested that Parziale provide Veronesi's complete medical records, howver Parziale did not have these records. Since Parziale was not the Executor of Veronesi's estate, he could not authorize release of the records and AHL was required to obtain a medical release from Veronesi's executrix, Karin Ouellette.

24.     By letters to Ouellette and to Parziale dated March 7, 2003, AHL denied Parziale's claim and rescinded the Policy having determined that Veronesi had incorrectly responded to several questions on the Policy application. Specifically, AHL stated that because Veronesi had failed to disclose her July 12, 2001 visit to Dr. Rothchild, and because she falsely stated that she had not "been examined or treated at a hospital or other medical facility (within the last five years)," she had made a material misrepresentation on the Policy application with regard to her medical history. AHL further stated that had Veronesi correctly informed AHL of her medical history, that AHL would not have issued the Policy.

25.     Ouellette, Veronesi's long-time friend and Executrix of Veronesi's estate, testified at her deposition that Veronesi did not tell her about any doctor visits that she had prior to the end of July, 2001. She testified that she was surprised when she learned of Veronesi's illness because Veronesi had always been in good health.

26.     Ouellette testified that she knew Veronesi to be an honest and fair person.

27.     On April 26, 2001, after reviewing the MGH Second Opinion, a representative of AHLI made the recommendation "I believe we should pay this claim" in the claim notes.

B.     Defendant's Concise Summary of the Evidence

1.     On September 21, 2001, American Heritage Life Insurance Company ("AHL") issued a policy insuring the life of Ms. Maryann Veronesi ("Veronesi") in the amount of $99,000 under AHL Policy Number 95071110 (the "Policy"). Plaintiff William Parziale ("Parziale") was named as a beneficiary under the Policy. The Policy application is dated July 25, 2001, and was issued with an effective date of July 25, 2001.

2.     Although Veronesi had sought medical treatment at the Lahey Clinic in Burlington, Massachusetts several times for a variety of ailments during the months prior to her

application for the Policy, she made no mention of this on her application. Specifically, in December 2000, Veronesi sought treatment at the emergency room at the Lahey Clinic on two separate occasions. On December 13, 2000, Veronesi was admitted to the emergency room complaining of right flank pain, dizziness, cold sweats, dysuria,[2] and urinary frequency. Following Veronesi's visit on December 13, Dr. John McCarthy's prognosis was "probable cystitis."[3] Four days later, on December 17, 2000, Veronesi returned to the emergency room at the Lahey Clinic, complaining of right flank pain and vomiting. Veronesi also contacted Dr. Pazirandeh at the Lahey Clinic on June 15, 2001, complaining of "falling asleep at the wheel."

3.    Veronesi visited the office of Dr. Joseph Rothchild on July 12, 2001, complaining of fatigue, chest pain, difficulty swallowing, and regurgitation. Several diagnostic tests were performed, including an HIV screen, to which Veronesi specifically consented. Dr. Rothchild's assessment noted that he would "consider various infections including hepatitis, HIV, and mono." An x-ray was also taken, which revealed "fullness in the AP window," and a CT scan was recommended to "exclude the possibility of adenopathy."[4]

4.    At 5:10 p.m. on July 25, 2001, Veronesi was again admitted to the emergency room at the Lahey Clinic, complaining of difficulty breathing and hoarseness. Veronesi's medical records also show that she had been experiencing difficulty breathing for the three weeks prior, and that she had experienced hoarseness since Sunday, July 22. Indeed, Veronesi had "lost her voice" by the time she had appeared at the emergency room.

5.    Veronesi made no mention of any of her visits to the Lahey Clinic on her application. Specifically, Question No. 14, Part 2 (a) on the Policy application inquired: "[h]as any person to be insured been examined or treated at a hospital or other medical facility (within the last 5 years) or are they currently under the care of a doctor?" Veronesi responded "no."

6.    Veronesi likewise made no mention of her x-ray or other diagnostic tests that she had on July 12, 2001, or of the fact that Dr. Rothchild had recommended a CT scan be taken. Question No. 14, Part 2 (b) inquired: "[h]as any person to be insured … been advised to have or contemplate having any diagnostic test, treatment or surgery?" Again, Veronesi answered "no."

7.    Veronesi was likely aware that a CT scan had been recommended by Dr. Rothchild before her July 25, 2001 emergency room visit. Dr. Christine Williamson, who operated on Veronesi after her July 25 emergency room visit, noted in her Discharge Summary that Veronesi "had a chest x-ray ordered by her primary care physician … mid-July of this year, which showed some question of adenopathy in the chest … she was planning to have a CT scan of the chest to investigate this."

---

[2] Painful or difficult urination.

[3] Inflammation of the bladder.

[4] Enlargement of the glands, especially of the lymphatic glands.

8.      Robert Ehrlich ("Ehrlich"), an independent agent who solicited Veronesi's application for the Policy, testified in his deposition that he met with Veronesi sometime on or before July 25, 2001.  Although Ehrlich had unequivocally stated in writing to AHL during its investigation of Parziale's claim that he visited Veronesi's home sometime after 7:00 p.m. on July 25, Ehrlich testified in his deposition that he solicited the application in the afternoon.

9.      The policy application sought life insurance coverage for less than $100,000 and therefore did not require a medical examination.  It was Ehrlich's usual practice not to solicit applications for life insurance policies in excess of $99,000, because these policies required the applicant to submit to a medical examination.

10.      Parziale testified in his deposition that Ehrlich solicited the Policy application the afternoon of July 25, 2001, which he noted was the same day that Veronesi went to the emergency room at the Lahey Clinic.  Parziale did not accompany Veronesi to the emergency room, but met her there later that evening.  Both Ehrlich and Parziale testified in their depositions that Veronesi completed the Policy application herself.

11.      Veronesi worked as an office manager at Connaughton Construction forty hours per week through February 26, 2002.  Veronesi's regular hours were 9:00 a.m. to 5:00 p.m.  Veronesi's payroll records for the week of July 24, 2001 show that she worked a full forty-hour week, without taking any sick or vacation time.

12.      The results of Veronesi's CT scan performed at the emergency room on July 25, 2001 revealed a "hilar mass with anterior mediastinal mass."[5]  Veronesi's preliminary diagnosis was lymphoma and Hodgkin's disease, and she was scheduled to be seen the following day for "a workup which may well involve a Chamberlain procedure."  Veronesi's medical records also indicate that her preliminary diagnosis and treatment options were discussed with her and her "significant other."

13.      Just over seven months later, on March 4, 2002, Veronesi died.  The primary cause of her death was "mediastinal large cell carcinoma."[6]  That afternoon, Parziale made a claim under the Policy via telephone and submitted a Claimant's Statement on or about March 14, 2002.  Parziale's Claimant's Statement failed to disclose all of the doctors who had treated Veronesi during the past five years, even though he was aware of Veronesi's other physicians because he had taken Veronesi to her chemotherapy appointments.  In addition, Parziale also had joined Veronesi at several of her other medical appointments, including Veronesi's visit to Dr. McCarthy on December 13, 2000, to the emergency room on July 25, 2001, and to Dr. Williamson on July 26 and August 23, 2001.

---

[5] A "hilar ... mediastinal mass" is a mass located in the depression at that part of the trachea, bronchi, esophagus, thymus, lymph nodes, or thoracic duct where the blood vessels and nerves enter.

[6] "Large cell carcinoma" is a malignant tumor in the lung consisting of undifferentiated cells of large size which tend to infiltrate the surrounding tissues and metastasize.

51347361.3

14.     AHL responded to Parziale's inquiries during the investigation, speaking to him on the telephone on several occasions. AHL also corresponded regularly with Parziale to inform him of the status of the claim. Although AHL requested that Parziale provide Veronesi's complete medical records, the process was delayed because AHL was required to obtain a medical release from Veronesi's executrix, Karin Ouellette. As a result, AHL did not have Veronesi's complete medical records until sometime after December 10, 2002.

15.     By letters to Ouellette and to Parziale dated March 7, 2003, AHL denied Parziale's claim and rescinded the Policy having determined that Veronesi had incorrectly responded to several questions on the Policy application. Specifically, AHL stated that because Veronesi had failed to disclose her July 12, 2001 visit to Dr. Rothchild, and because she falsely stated that she had not "been examined or treated at a hospital or other medical facility (within the last five years)," she had made a material misrepresentation on the Policy application with regard to her medical history. AHL further stated that had Veronesi correctly informed AHL of her medical history, that AHL would not have issued the Policy.

16.     The sole basis Parziale alleges in support of his M.G.L. c. 93A claim is that AHL denied any liability to him and declined to make an offer of settlement.

17.     The only purported symptom of emotional distress that Parziale alleges is "disbelief" that his claim under the Policy was denied.

**2.     Undisputed Facts**

A.     AHL issued a ten-year renewable and convertible term life insurance policy under policy number 95071110 insuring the life of Ms. Maryann Veronesi ("Veronesi") in the amount of $99,000.00 (the "Policy"), of which Parziale is named as a beneficiary. The Policy was issued on September 21, 2001, with an effective date of July 25, 2001.

B.     AHL independent agent Robert Ehrlich ("Ehrlich") solicited Veronesi's application for the Policy sometime on or before July 25, 2001.

C.     On December 13, 2000, Veronesi was admitted to the emergency at the Lahey Clinic room complaining of right flank pain, dizziness, cold sweats, dysuria, and urinary frequency. Following Veronesi's visit on December 13, Dr. John McCarthy's prognosis was "probable cystitis." Four days later, on December 17, 2000, Veronesi returned to the emergency room at the Lahey Clinic, complaining of right flank pain and vomiting.

D.     Veronesi visited the office of Dr. Joseph Rothchild on July 12, 2001, complaining of fatigue, chest pain, difficulty swallowing, and regurgitation. Several diagnostic tests were performed, including an HIV screen, to which Veronesi specifically consented. Dr. Rothchild's assessment noted that he would "consider various infections including hepatitis, HIV, and mono." An x-ray was also taken, which revealed "fullness in the AP window," and a CT scan was recommended by the radiologist to "exclude the possibility of adenopathy."

E.      Question 14 in its entirety reads:  "**NON-MEDICAL QUESTIONNAIRE**.  (Exclude history of: colds, flu, minor injuries, normal childbirth, seasonal hay fever, appendicitis or tonsillitis.)

Question No. 14, Part 2 (a) on the Policy application inquired:  "[h]as any person to be insured been examined or treated at a hospital or other medical facility (within last 5 years) or are they currently under the care of a doctor?"  Veronesi responded "no."

F.      Question No. 14, Part 2 (b) on the Policy application inquired:  "[h]as any person to be insured … been advised to have or contemplate having any diagnostic test, treatment or surgery?"  Again, Veronesi answered "no."

H.      At 5:10 p.m. on July 25, 2001, Veronesi was admitted to the emergency room at the Lahey Clinic in Burlington, Massachusetts, complaining of difficulty breathing and hoarseness.

I.      Veronesi worked forty hours per week as an office manager at Connaughton Construction until February 26, 2002.  Veronesi's regular hours were 9:00 a.m. to 5:00 p.m.  Veronesi's payroll records for the week of July 24, 2001 show that she worked a full forty-hour week, without taking any sick or vacation time.

J.      Veronesi died on March 4, 2002.

L.      The afternoon of March 4, 2002, Parziale made a claim under the Policy via telephone.  Parziale submitted a Claimant's Statement to AHL on or about March 14, 2002.

M.      AHL declined to pay Parziale's claim under the Policy in part due to Veronesi's responses to Question 14 Parts 2 (a) and (b) on the Policy application.

O.      AHL responded to Parziale's inquiries during the investigation, speaking to him on the telephone on several occasions.  AHL also corresponded regularly with Parziale to inform him of the status of the claim.  The process was delayed because AHL was required to obtain a medical release from Veronesi's executrix.  As a result, AHL did not have Veronesi's complete medical records until sometime after December 10, 2002.

P.      By letters dated March 7, 2003, AHL denied Parziale's claim and rescinded the AHL Policy due to material misrepresentations on the Policy application.  AHL stated that because Veronesi had failed to disclose her July 12, 2001 visit to Dr. Rothchild, and because she stated that she had not "been examined or treated at a hospital or other medical facility (within the last five years)," she had made a material misrepresentation on the Policy application with regard to her medical history.  AHL further stated that had Veronesi correctly informed AHL of her medical history, that AHL would not have issued the Policy.

Q.      The only purported symptom of emotional distress that Parziale alleges is "disbelief" that his claim under the Policy was denied.  Parziale has never received treatment of any kind for his alleged emotional distress.

-8-

3.     **Disputed Facts**

A.     Whether Parziale is entitled to any benefit under the Policy.

B.     Whether Veronesi's responses to Question 14 Parts 2 (a) and (b) on the Policy application concerning her medical history were willfully false, fraudulent, or misleading within the meaning of M.G.L. c. 175, § 124.

C.     The date and time the Policy application was completed.

D.     Whether Parziale has suffered any emotional distress as the result of any actions and/or omissions of AHL.

E.     Whether AHL denied Parziale's claim based on a plausible interpretation of the Policy.

4.     **Jurisdictional Questions**

There are no jurisdictional issues.

5.     **Pending Motions**

There are no pending motions.

6.     **Issues of Law**

The parties do not anticipate any unusual legal issues to arise during the course of trial, and agree that the statutory and common law of Massachusetts regarding contracts, negligent infliction of emotional distress, misrepresentation in connection with an application for life insurance under M.G.L. c. 175, § 124, and unfair and/or deceptive trade practices under M.G.L. c. 93A apply to this matter.

7.     **Requested Amendments to the Pleadings**

There are no requested amendments to the pleadings.

8.     **Additional Matters**

The parties are presently unaware of any additional matters to aid in the disposition of this action.

51347361.3

**9.** **Probable Length of Trial – Jury**

This is a jury trial. The parties anticipate two or three full days of trial.

**10.** **Names and Addresses of Witnesses**

The parties anticipate they may call all or some of the following fact witnesses listed below, and each party reserves the right to call any of the witnesses listed by any other party. The parties expressly reserve the right to supplement their lists as evidence and testimony are introduced at trial, or for good cause shown. The parties further reserve the right to amend their witness lists and call additional witnesses, if necessary, to rebut testimony offered by any other party's witnesses. There are no expert witnesses.

A.    Plaintiff's Proposed Fact Witnesses are:

    1.  William Parziale, 18 Park Drive, Woburn, MA

    2.  Karin Ouellette

    3.  Dr. Christine Williamson, Lahey Clinic, Woburn, MA

    4.  Robert Ehrlich, 438 Massachusetts Avenue #119, Arlington, Massachusetts

    5.  Dr. Rothchild

    6.  Any witnesses named by defendant.

    7.  Plaintiff reserves the right to supplement this response

B.    Defendant's Proposed Fact Witnesses are:

    1.  William Parziale, 18 Park Drive, Woburn, Massachusetts.

    2.  Robert Ehrlich, 438 Massachusetts Avenue #119, Arlington, Massachusetts.

    3.  Pearl Harrison, American Heritage Life Insurance Company, 1776 American Heritage Life Drive, Jacksonville, Florida.

    4.  John Johnson, American Heritage Life Insurance Company, 1776 American Heritage Life Drive, Jacksonville, Florida.

**11.** **Proposed Exhibits**

The parties expressly reserve the right to amend these exhibit lists up to the time of trial. The parties further reserve the right to use charts or enlargements during the course of trial as needed. In addition, the parties expressly reserve the right to offer exhibits not listed below for rebuttal and impeachment at the time of trial.

A.    Exhibits to Be Introduced Without Objection:

1. American Heritage Stop Payment Request dated 11/3/03
2. Letter from S. Marchy to P. Michaels dated 11/10/03
3. Letter from K. Ouellette to S. Marchy with enclosures dated 6/14/03
4. Letter from S. Marchy to K. Ouellette dated 3/7/03
5. Letter from S. Marchy to W. Parziale dated 3/7/03
6. American Heritage Life Insurance Company Amendment Re: Cooperation of Beneficiary
7. Letter from S. Marchy to Connaughton Construction dated 9/18/02
8. American Heritage Life Insurance Company Policy Specifications, Policy No. 95071110
9. Computer Screen Print of American Heritage Life Insurance Company Policy Specifications Page 3
10. American Heritage Life Insurance Company Application for Life Insurance dated 7/25/01
11. Authorization to American Heritage Life Insurance Company for Pre-Authorized Bank Draft dated 7/25/01
12. Premium Discrepancy Memorandum from American Heritage Life Insurance Company to Servicing Agent 0MT70 dated 9/24/01
13. Computer screen print of application of M. Veronesi entered 8/09/01
14. Premium Discrepancy Memorandum from R. Ehrlich to American Heritage Life Insurance Company
15. American Heritage Life Insurance Company 20 day Right to Refund, Form 10YTP-80
16. Voided Check from account of M. Veronesi at Metro West Bank
17. A Term Life Insurance Policy Illustration for M. Veronesi by S. Gift dated 8/8/01
18. American Heritage Life Insurance Company Policy Issue Card
19. Letter from American Heritage Life Insurance Company to M. Veronesi dated 11/9/01
20. Computer screen print of Refund of Premium to M. Veronesi
21. Letter from S. Marchy to W. Parziale dated 12/4/02
22. Letter from S. Marchy to W. Parziale dated 11/1/02
23. Letter from S. Marchy to K. Ouellette dated 12/10/02
24. Letter from P. Michaels to S. Marchy with enclosure dated 7/21/03
25. Fax from R. Ehrlich to S. Marchy dated 9/25/02
26. Fax from S. Marchy to R. Ehrlich dated 9/18/02
27. Letter from S. Marchy to R. Ehrlich dated 9/18/02 with handwritten responses
28. Fax from E. Burk to S. Marchy dated 9/25/02 with handwritten notes
29. Letter from S. Marchy to Connaughton Construction dated 3/15/02 with handwritten responses, and attachments (Job Description – Office Manager and Connaughton Construction Employee Earnings Record for M. Veronesi)
30. Fax from E. Burk to S. Marchy dated 9/25/02
31. Listing of Manulife Mutual Funds signed by M. Veronesi
32. Letter from S. Marchy to P. Michaels dated 7/14/03

51347361.3

33.    Letter from S. Marchy to P. Michaels dated 8/11/03
34.    Letter from S. Marchy to W. Parziale dated 3/6/02
35.    Letter from S. Marchy to W. Parziale dated 3/15/02
36.    Letter from S. Marchy to W. Parziale dated 4/29/02
37.    Letter from S. Marchy to W. Parziale dated 5/7/02
38.    Letter from W. Parziale to S. Marchy dated  6/18/02
39.    Letter from S. Marchy to W. Parziale dated 7/1/02
40.    Letter from S. Marchy to W. Parziale dated 10/4/02
41.    Letter from W. Parziale to S. Marchy dated  10/11/02
42.    Letter from P. Michaels to S. Marchy dated 6/10/03
43.    Death Claim cover sheet for Policy No. 9507110
44.    Ordinary Death Claims Claim Routing/Work Up for Policy No. 9507110
45.    Handwritten Notes Bates No. AHL 00174
46.    Letter from S. Marchy to Connaughton Construction dated 3/15/02
47.    Letter from S. Marchy to R. Ehrlich dated 9/18/02
48.    Fax from R. Ehrlich to S. Marchy dated 9/17/02
49.    Handwritten response of R. Ehrlich to letter from S. Marchy letter dated 9/18/02
50.    Letter from S. Marchy to R. Ehrlich dated 9/12/02
51.    Letter from S. Marchy to R. Ehrlich dated 9/18/02 with handwritten notes dated 9/24/02
52.    Fax transmission report dated 9/18/02 for fax from S. Marchy to R. Ehrlich dated 9/18/02
53.    Fax transmission report dated 9/19/02 for fax from S. Marchy to R. Ehrlich dated 9/18/02
54.    Letter from W. Parziale to S. Marchy dated  8/23/02 with attached Emergency Medicine report dated 7/25/01
55.    Lahey Clinic Emergency Department Test Orders dated 7/25/01
56.    Lahey Clinic Emergency Department Patient Flow Sheet dated 7/25/01
57.    Diagnostic Radiology CT SCAN dated 7/25/01
58.    Lahey Clinic Emergency Department- Patient Flow Sheet dated 12/17/00
59.    Lahey Clinic Emergency Department Orders dated 12/17/00
60.    Lahey Clinic Emergency Department Patient Flow Sheet dated 1/28/02
61.    Lahey Clinic Emergency Department Orders dated 01/28/02
62.    Confirmation Report for Fax from S. Marchy to R. Ehrlich dated 7/22/02
63.    Fax from S. Marchy to R. Ehrlich dated 7/22/02
64.    Fax from S. Marchy to R. Ehrlich dated 7/1/02 with handwritten responses
65.    Fax from S. Marchy to R. Ehrlich dated 7/1/02 with handwritten note dated 7/8/02
66.    Letter from K. Ouellette to S. Marchy dated 4/15/02
67.    Letter from K. Ouellette to Lahey clinic dated 4/15/02
68.    American Heritage Life Insurance Company Claim Referral handwritten notes AHL 00233-37
69.    Copy of American Heritage Life Insurance Company check No. 1079627
70.    Check stub for American Heritage Life Insurance Company check No. 1079627

71. E-mail From B. Fleming to S. Marchy dated 3/24/03
72. Policy/Premium Information for claim No. 02-V-03
73. Ordinary Death Claim Notification from S. Marchy to P. Harrison dated 3/8/02
74. Ordinary Death Claim Notification from S. Marchy to P. Harrison dated 3/8/02 with handwritten memo from N. Crawford dated 3/21/02
75. Death Claim Notification By Phone Call dated 3/4/02
76. Envelope Addressed to S. Marchy from Lahey Clinic stamped 4/12/02
77. American Heritage Life Insurance Company Claimant's Statement dated 3/15/02
78. Death Certificate for Maryann Veronesi
79. From W-9 for W. Parziale dated 3/11/02
80. Lahey Clinic Diagnostic Radiology Requisition No. M965236 dated 7/13/01
81. Progress Notes dated 7/12/01
82. General Internal Medicine Dr. Joseph Rothchild dated 7/12/01
83. Progress Notes Otolaryngology/Head and Neck Surgery – Dr. Robert Dolan, dated 07/25/01
84. Lahey Clinic Emergency Department Admission Record dated 7/25/01
85. Lahey Clinic Consultation From dated 7/25/01
86. Hematology Consultation with Dr. Neil J. Weiner dated 7/26/01
87. Lahey Clinic Progress Notes dated 8/8/01-8/10/01
88. Thoracic and Cardiovascular Surgery Progress Notes of Dr. Williamson dated 7/26/01
89. Radiation Therapy Note dated 8/23/01
90. Interoffice Memorandum from Dr. Williamson to Dr. Rehm dated 9/11/01
91. Medical Oncology Outpatient Medical Oncology Progress Notes - Dr. White dated 2/20/02
92. Bronchoscopy Report dated 2/13/02
93. Bronchoscopy Report dated 1/31/02
94. Bronchoscopy Report dated 1/30/02
95. Oncology Nursing Note dated 1/25/02
96. Lahey Clinic Oncology Nursing Note dated 1/25/02
97. Medical Oncology Note Dr. C. White dated 1/25/02
98. Oncology Nursing Note dated 1/04/02
99. Progress Notes – Social Work dated 1/04/02
100. Medical Oncology Note Dr. White dated 1/04/02
101. Medical Oncology Note Dr. White dated 12/13/01
102. Progress Notes - Social Work dated 11/30/01
103. Oncology Nursing Note dated 11/30/01
104. Medical Oncology Note – Dr. White dated 11/30/01
105. Oncology Progress Notes – Dr. White dated 11/21/01
106. Oncology Nursing Note dated 11/02/01
107. Radiation Oncology Discharge Summary – Dr. Cassady dated 11/09/01
108. Progress Notes – Social Work dated 11/02/01
109. Medical Oncology Note - Dr. White dated 11/02/01

110.   Progress Notes dated 10/17/01
111.   Emergency Department Patient Flow Sheet dated 10/16/2001
112.   Emergency Department Orders dated 10/16/01
113.   Emergency Admission Record Dated 10/16/01
114.   Lahey Clinic Emergency Admission Record dated 10/16/01
115.   Oncology Nursing Note dated 10/05/01
116.   Oncology Progress Notes - Dr. White dated 10/07/01
117.   Medical Oncology Note - Dr. White dated 9/28/01
118.   Oncology Nursing Note dated 9/28/01
119.   Oncology Nursing Note dated 9/21/01
120.   Medical Oncology Note - Dr. White dated 9/21/01
121.   Oncology Nursing Note dated 9/14/01
122.   Progress Notes - Social Work dated 9/14/01
123.   Oncology Progress Notes - Dr. Shuster dated 09/14/01
124.   Oncology Nursing Note – dated 9/7/01
125.   Progress Notes dated 09/06/01
126.   Lahey Clinic Data Regional Nodal Stations for Lung Cancer Staging
127.   Pathology Report dated 1/22/02
128.   Progress Note - Dr. Williamson dated 8/29/01
129.   Radiation Therapy Note - Dr. Girshovich dated 08/27/01
130.   Radiation Oncology Progress Note dated 8/24/01
131.   Medical Oncology Note - Dr. White dated 08/10/01
132.   Diagnostic Radiology Progress Notes dated 08/07/01
133.   Emergency Department Orders dated 7/25/01
134.   Emergency Department – Patient Flow Sheet dated 7/25/01
135.   Hospital Note  - Date unknown – Bates No. AHL 00356
136.   Page 2 of  Nurse's Note – Bates No. AHL 00357
137.   Progress Notes - Dr. Williamson 7/26/01
138.   General Internal Medicine Progress Notes - Dr. McCarthy dated 12/13/00
139.   Emergency Department Admission Record dated 12/17/00
140.   Lahey Clinic Department of Laboratory Medicine report dated 12/14/00
141.   Lahey Clinic Department of Laboratory Medicine report dated 12/17/00
142.   Lahey Clinic Department of Laboratory Medicine report dated 7/12/01
143.   Lahey Clinic Department of Laboratory Medicine – Emergency Room
       report dated 7/26/01
144.   Lahey Clinic Department of Laboratory Medicine – Unknown Outpatient
       Location report dated 7/26/01
145.   Lahey Clinic Department of Laboratory Medicine report dated 7/25/01
146.   Lahey Clinic Department of Laboratory Medicine report dated 8/10/01
147.   Lahey Clinic Department of Laboratory Medicine report dated 9/21/01
148.   Lahey Clinic Department of Laboratory Medicine report dated 9/14/01
149.   Lahey Clinic Department of Laboratory Medicine report dated 9/7/01
150.   Lahey Clinic Department of Laboratory Medicine report dated 8/29/01
151.   Lahey Clinic Department of Laboratory Medicine report dated 9/28/01
152.   Lahey Clinic Department of Laboratory Medicine report dated 10/5/01
153.   Lahey Clinic Department of Laboratory Medicine report dated 10/11/01

154.  Lahey Clinic Department of Laboratory Medicine report dated 10/18/01
155.  Lahey Clinic Department of Laboratory Medicine report dated 11/2/01
156.  Lahey Clinic Department of Laboratory Medicine report dated 11/30/01
157.  Lahey Clinic Department of Laboratory Medicine report dated 11/21/01
158.  Lahey Clinic Department of Laboratory Medicine report dated 12/13/01
159.  Lahey Clinic Department of Laboratory Medicine report dated 12/18/01
160.  Lahey Clinic Department of Laboratory Medicine report dated 1/4/02
161.  Lahey Clinic Department of Laboratory Medicine report dated 1/10/02
162.  Lahey Clinic Department of Laboratory Medicine report dated 1/24/02
163.  Lahey Clinic Department of Laboratory Medicine report dated 1/28/02
164.  Lahey Clinic Department of Laboratory Medicine report dated 2/12/02
165.  Lahey Clinic Department of Laboratory Medicine report dated 2/13/02
166.  Lahey Clinic Department of Laboratory Medicine report dated 2/27/02
167.  Lahey Clinic Department of Laboratory Medicine report dated 10/28/01
168.  Lahey Clinic Department of Laboratory Medicine report dated 12/22/01
169.  Lahey Clinic Diagnostic Radiology report dated 1/21/00
170.  Lahey Clinic Diagnostic Radiology report – Dr. Baker dated 7/25/01
171.  Lahey Clinic Diagnostic Radiology report – Dr. Wald dated 7/25/01
172.  Lahey Clinic Diagnostic Radiology report dated 8/7/01
173.  Lahey Clinic Diagnostic Radiology report dated 7/26/01
174.  Lahey Clinic Diagnostic Radiology report dated 8/16/01
175.  Lahey Clinic Diagnostic Radiology report dated 10/10/01
176.  Lahey Clinic Diagnostic Radiology report dated 2/24/02
177.  Lahey Clinic Diagnostic Radiology report dated 2/13/02
178.  Lahey Clinic Diagnostic Radiology report - Dr. Lee dated 12/19/01
179.  Lahey Clinic Diagnostic Radiology report – Dr. Arndt dated 12/19/01
180.  Lahey Clinic Diagnostic Radiology report dated 12/20/01
181.  Lahey Clinic Diagnostic Radiology report dated 7/30/01
182.  Lahey Clinic Diagnostic Radiology report dated 9/1/01
183.  Lahey Clinic Diagnostic Radiology report dated 10/24/01
184.  Lahey Clinic Routine Record dated 2/27/02
185.  Lahey Clinic Routine Record dated 3/1/02
186.  Lahey Clinic Routine Record  dated 2/12/02
187.  Referring Diagnosis dated 02/27/02
188.  Lahey Clinic Routine Record dated 7/25/01
189.  Referring Diagnosis dated 12/20/01
190.  Lahey Clinic Routine Record dated 12/19/01
191.  Massachusetts General Hospital Radiological Consultation dated 8/08/01
192.  Massachusetts General Hospital Radiological Consultation – Dr. Davis dated 11/19/01
193.  Massachusetts General Hospital Radiological Consultation – Dr. Wise dated 11/19/01
194.  MGH Cancer Center – Office Visit – Dr. Fidias dated 8/21/01
195.  Surgical Pathology Report Massachusetts General Hospital dated 8/22/01
196.  MGH Cancer Center – Office Visit – Dr. Sipkins dated 8/21/01
197.  Massachusetts General Hospital Radiological Consultation dated 02/08/02

198.  Untitled document dated 3/6/02, 2:42 p.m.
199.  Untitled documents Bates No. AHL 00442-449
200.  Records Request to Dr. Joseph Rothchild dated 11/19/02
201.  Oncology Nursing Note dated 9/7/01
202.  Lahey Clinic Diagnostic Radiology report dated 8/9/01
203.  Records Request to Massachusetts General Hospital dated 4/23/02 with handwritten notes
204.  Letter from Massachusetts General Hospital dated 5/20/02
205.  Records Request to Dr. Joseph Rothchild dated 11/19/02 with handwritten notes
206.  Communication Result Report dated 2/3/03
207.  Records Request to Dr. Joseph Rothchild dated 12/27/02 with handwritten notes
208.  EMSI Services, Inc records request form dated 12/26/02
209.  Letter from K. Ouellette to Lahey Clinic dated 12/19/02
210.  Fax from Massachusetts General Hospital to S. Marchy dated 4/23/02
211.  MGH Cancer Center Office Visit Report dated 2/14/02
212.  Fax from Lahey Clinic to American Heritage Life Insurance Company dated 3/29/02
213.  Discharge Summary - Dr. White dated 02/01/02
214.  Summary of Results For Discharged Inpatient dated 03/29/02
215.  Memo From Lahey Clinic to American Heritage Life Insurance Company dated 4/12/02
216.  Fax from S. Marchy to Lahey Clinic dated 3/26/02 with handwritten notes
217.  Authorization and Release signed by M. Veronesi dated 7/25/01
218.  Confirmation Report of Fax from S. Marchy to Lahey Clinic dated 03/26/02
219.  Fax from S. Marchy to Lahey Clinic dated 3/26/02
220.  EMSI Services Record of Attending Physician request form re:  Dr. Dammin from S. Marchy dated 4/17/02
221.  EMSI Services Record of Attending Physician request form re:  Massachusetts General Hospital from S. Marchy dated 4/17/02
222.  EMSI Services Record of Attending Physician request form re:  Dr. Compagna from S. Marchy dated 3/15/02
223.  EMSI Services Record of Attending Physician request form re:  Dr. Fry from S. Marchy dated 3/15/02
224.  EMSI Services Record of Attending Physician request form re:  Dr. White from S. Marchy dated 3/15/02
225.  Records Request re:  Dr. Compagna dated 3/18/02 with handwritten notes
226.  Records Request re:  Dr. Fry dated 3/18/02 with handwritten notes
227.  Records Request dated 4/23/02 with handwritten notes
228.  Records Request dated 4/23/02 re:  Dr. Dammin with handwritten notes
229.  EMSI Services Record of Attending Physician request form re:  Dr. Rothchild from S. Marchy dated 10/22/02
230.  Communication Result Report re:  fax from S. Marchy to Dr. Rothschild's Office dated 11/25/02

231. Fax from S. Marchy to Dr. Rothschild's Office dated 11/25/02
232. E-Mail from S. Jones to S. Marchy dated 11/19/02
233. E-mail from S. Marchy to S. Jones dated 11/19/02
234. E-Mail from S. Jones to S. Marchy dated 11/12/02
235. E-mail from S. Marchy to S. Jones dated 11/8/02
236. E-Mail from S. Jones to S. Marchy dated 11/6/02
237. Letter from K. Ouellette to Whom it May Concern dated 6/24/03
238. Commonwealth of Massachusetts Probate of Will of M. Veronesi dated 6/12/02
239. Letter from Dr. Rothchild to P. Michaels dated 9/29/04
240. Fax from T. Harvey to P. Michaels dated 4/18/05
241. Affidavit of T. Harvey
242. Fax cover sheet from K. Ouellette to H. Popick dated 3/14/04 (sic)
243. Lahey Clinic Authorization for Use or Disclosure of Medical Record Information dated 3/8/05
244. Last Will and Testament of M. Fink Veronesi dated 8/2/01
245. Final Checklist for Will – Standard dated 8/2/01
246. Letter from S. Marchy to K. Ouellette with copy of check No. 1079627 dated 3/27/03
247. Letter from K. Ouellette to P. Michaels dated 8/15/04
248. Letter from P. Michaels to K. Ouellette dated 7/19/04
249. Letter from C. Tolley to J. Aframe dated 8/14/02 with handwritten notes
250. Fax from J. Aframe to K. Ouellette dated 8/15/02
251. Fax from K. Ouellette to C. Tolley dated 8/26/02
252. Letter from K. Ouellette to C. Tolley dated 1/27/03
253. Letter from C. Tolley to K. Ouellette dated 11/25/02
254. Letter from K. Ouellette to C. Tolley dated 11/8/02
255. Letter from C. Tolley to K. Ouellette dated 10/23/02
256. Letter from K. Ouellette to S. Grimes dated 8/21/02
257. Letter from S. Grimes to K. Ouellette dated 8/13/02
258. Letter from S. Grimes to W. Parziale dated 7/15/02
259. Letter from K. Ouellette to Balogh Becker Ltd. dated 5/4/04
260. Letter from Balogh Becker Ltd. to Estate of M. Veronesi dated 4/15/04
261. Victoria's Secret Gold Account Statement dated 5/20/02 with handwritten notes
262. Letter from J. Aframe to K. Ouellette dated 4/22/02
263. Commonwealth of Massachusetts Information and Rights of Interested Parties in Estate of M. Veronesi
264. Letter from J. Aframe to K. Ouellette dated 8/1/03
265. Commonwealth of Massachusetts First and Final Account of K. Ouellette dated 8/4/03
266. Commonwealth of Massachusetts Inventory of K. Ouellette dated 6/14/03
267. Letter from J. Aframe to W. Parziale dated 8/6/03
268. U.S. District Court Subpoena dated 2/11/05
269. Lahey Clinic Certification of Medical Report Copy dated 3/15/05
270. Lahey Ambulatory Order Form

271. Lahey Ambulatory Order Form dated 12/14/00
272. Consent for Treatment dated 12/17/00
273. Lahey Clinic Telephone Memorandum dated 12/13/00
274. Lahey Telephone Memorandum dated 12/13/00 to Rehm From Ms. Fink
275. Lahey Telephone Memorandum dated 12/14/00 to Dr. McCarthy From Ms. Fink
276. Lahey Ambulatory Order Form dated 12/13/00
277. Lahey Ambulatory Order Form dated 06/15/01
278. Lahey Ambulatory Order Form - Hematology dated 7/26/01
279. Lahey Ambulatory Order Form dated 7/26/01
280. Consent for Treatment dated 7/25/01
281. Ambulatory Order Form dated 08/01/01
282. Progress Notes, Medical Oncology, dated 08/09/01
283. Ambulatory order Form dated 08/10/01
284. Progress Notes – Dr. White  dated 08/10/01
285. Ambulatory Order Form dated 08/10/01
286. Telephone Memorandum dated 8/22/01 for Dr. White from Ms. Fink
287. Ambulatory Order Form Bates No. ROTH 0044
288. Ambulatory Order Form  dated 07/12/01
289. Consent to HIV Laboratory Test dated 07/11/01
290. Ambulatory Order Form  dated  08/01/01
291. Ambulatory Order Form dated 08/23/01, Bates No. ROTH 0054
292. Ambulatory Order Form dated 08/23/01, Bates No. ROTH 0055
293. Ambulatory Order Form dated 08/23/01, Bates No. ROTH 0056
294. Ambulatory Order Form dated 08/27/01
295. Telephone Memorandum dated 08/29/01 for Dr. White from Ms. Fink
296. Progress Notes/Ambulatory Order Form dated 08/29/01
297. Lahey Ambulatory Order Form dated 09/07/01
298. Lahey Ambulatory Order Form dated 09/14/01
299. Lahey Ambulatory  Order Form dated  09/21/01
300. Ambulatory Order Form dated 09/27/01
301. Ambulatory Order Form dated 09/28/01
302. Ambulatory Order Form dated 10/05/01
303. Ambulatory Order Form dated 10/05/01, Bates No. ROTH 0090
304. Diagnostic Radiology dated 10/11/01
305. 38.Telephone Memorandum dated 10/11/01 for Dr. White from Ms. Fink
306. Ambulatory Order Form, Bates No. ROTH 0093
307. Consent  For Treatment dated 10/16/01
308. Ambulatory Order Form, Bates No. ROTH 0101
309. Lahey Ambulatory Order Form dated 10/17/01
310. Lahey Ambulatory Order Form  dated 10/18/01
311. Lahey Ambulatory Order Form dated 10/22/01
312. Department of Radiation Oncology dated 10/22/01
313. Lahey Ambulatory Order Form dated 11/02/01
314. Lahey Ambulatory Order Form dated 11/21/01
315. Telephone Memorandum dated 11/26/01 for Dr. White from Ms. Fink

316.    Ambulatory Order Form dated 10/26/01
317.    Ambulatory  Order Form dated 11/27/01
318.    Ambulatory Order Form dated 11/30/01
319.    Telephone Memorandum dated 12/05/01 for Dr. White from Ms. Fink
320.    Telephone Memorandum dated 12/13/01 for Dr. White from Ms. Fink
321.    Telephone Memorandum dated 12/12/01 for Dr. White from Ms. Fink
322.    Ambulatory Order Form dated 12/13/01
323.    Telephone Memorandum dated 12/24/01 for Dr. Wolff/White from Ms.
        Fink
324.    Ambulatory  Order Form dated 12/18/01
325.    Ambulatory  Order Form dated 01/04/02
326.    Ambulatory  Order Form dated 01/11/02
327.    Telephone Memorandum dated 01/14/02 for Dr. White from Ms. Fink
328.    Ambulatory Order Form dated  01/14/02
329.    Ambulatory  Order Form dated 01/25/02
330.    Ambulatory Order Form dated 01/30/02
331.    Ambulatory  Order Form dated 01/31/02
332.    Ambulatory Order Form dated 02/12/02
333.    Consent to Flexible Bronchoscopy with or without Biopsy
334.    Procedure Sheet dated 02/12/02
335.    Ambulatory  Order Form dated 02/13/02
336.    Progress Notes dictated into transcription system on 02/20/02
337.    Ambulatory  Order Form dated 02/20/02
338.    Telephone Memorandum dated 03/25/02 for Dr. White from Bill Pavriale
339.    Inpatient Notification Report dated 03/08/02
340.    Patient Data Summary dated 02/27/02
341.    Discharge Report, Bates No. ROTH 0230
342.    Lahey Clinic Admission Form dated 02/27/02
343.    Discharge Summary dated 2/27/02 by Dr. Campagna
344.    Physician Orders, Bates No. ROTH 0234-246
345.    Criteria Form dated 03/03/02
346.    Hyperalimentation Orders, Bates No. ROTH 0249-0250
347.    Department of Nursing - Initial Patient Assessment dated 02/27/02
348.    Interdisciplinary Patient Care Plan  dated 2/27
349.    Nursing Care Flow Sheet dated 2/27
350.    Interdisciplinary Patient/Family Teaching Record  2/27  & 3/3
351.    TPR/Graphic Flow Sheet  dated 2/27 – 2/28
352.    Routine Medication Sheet dated 2/27 - 03/05/02
353.    Routine Medication Sheet dated 02/27/02
354.    PRN Medication, Bates No. ROTH 0266-67
355.    PRN Medication, Bates No. ROTH 0268-69
356.    Critical Care Flow Sheet dated 02/27
357.    Strips, Bates No. ROTH 0273
358.    Nurses Notes dated 02/27/02
359.    Nursing Assessment, Bates No. ROTH 0275
360.    Critical Care Flow Sheet dated 02/28

51347361.3

361. Chart, Bates No. ROTH 0279
362. Nurses Notes dated 2/27-2/28/02
363. Nursing Assessment, Bates No. ROTH 0281
364. Critical Care Flow Sheet dated 3/1/02
365. Strips, Bates No. ROTH 0285
366. Nurses notes dated 03/01/02
367. Nursing Assessment, Bates No. ROTH 0287
368. Chart dated 03/02/02
369. Strips, Bates No. ROTH 0291
370. Nurses Notes dated 03/02/02
371. Nursing Assessment, Bates No. ROTH 0293
372. Critical Care Flow Sheet dated 03/03/02
373. Strips, Bates No. ROTH 0297
374. Nurses Notes dated 03/03/02
375. Nursing Assessment, Bates No. ROTH 0299
376. Critical Care Flow Sheet dated 03/04/02
377. Chart, Bates No. ROTH 0303
378. Nurses Notes, Bates No. ROTH 0304
379. Nursing Assessment, Bates No. ROTH 0305
380. Lahey Clinic Restraint Flow Sheet dated 03/03
381. Ventilator Flow Sheet dated 03/02/02
382. Ventilator Flow Sheet dated 03/04/02
383. Integrated Progress Notes dated 02/27 -03/03
384. Intra – Departmental Transfer Note dated 02/27/02
385. Integrated Progress Notes dated 02/27/02
386. History and Physical dated 02/27/02 - Dr. Beamis
387. Progress Notes, Bates No. ROTH 0317-0331
388. Critical Care Attending Progress Note, Bates No. 0332-0333
389. Progress Notes dated 03/01/02
390. Critical Care Attending Progress Note, Bates No. ROTH 0338-339
391. Progress Notes, Bates No. ROTH 0340-0356
392. Consultation Form dated 03/02/02
393. Consultation Form dated 2/28/02 – Social Work
394. Notes by the Social Worker dated 03/01/02
395. Consultation Form dated 02/28/02
396. Department of Laboratory Medicine, Inpatient Medical Records Copy dated 04/05/02
397. Diagnostic Radiology Order  for Low Sats, Check Effusions Performed 02/27/02
398. Diagnostic Radiology Order for Resp Failure performed 03/01/02
399. Diagnostic Radiology Order for Resp Failure Performed 03/02/02
400. Diagnostic Radiology Order for R/O Pneumonia Performed 03/02/02
401. Diagnostic Radiology Order for Tube Placement Performed 03/02/02
402. Diagnostic Radiology Order  for LT Arm Picc Placement Performed 03/02/02
403. Diagnostic Radiology Order for Resp Failure Performed 03/03/02

404.    Diagnostic Radiology Order for CK Lung Status Performed 03/04/02
405.    Routine Record Dated 03/02/02
406.    Routine Record Dated 03/04/02
407.    Referring Diagnosis : Eval LV Function Entered on 03/04/02
408.    Department of Laboratory Medicine  - Blood Bank dated 02/27/02
409.    Referring Diagnosis: Eval Peri Effusion Entered on 03/01/02
410.    Consent to Hospital Care and Routine Medical Treatment dated 02/27/02
411.    Patient Data Summary dated 01/28/02
412.    Information Sheet Bates No. ROTH 0384
413.    Discharge Summary by Dr. White Transcribed  on 02/00/02
414.    Patient Care Instructions, Bates No. ROTH 0389
415.    Consent for Treatment dated 01/28/02
416.    Emergency Department Admission Record dated 01/28/02
417.    Pre-Operative Checklist dated 01/29/02
418.    Operative Report By Dr. Beamis Dated 01/30/02
419.    Anesthesia Record, Bates No. ROTH 0398
420.    Post-Procedure Documentation, Bates No. ROTH 0399
421.    Post Procedure Flow Sheet, Bates No. ROTH 0400
422.    Pre-Procedure Sheet Dated 01/30/02
423.    Pre-Operative Checklist dated 01/30/02
424.    Operative Report by Dr. Beamis dated 01/31/02
425.    Pathology Report Ordered 01/31/02
426.    Pre-Procedure Interview dated 01/31/02
427.    Pre-Procedure Assessment dated 01/31/02
428.    Post Procedure Flow Sheet, Bates No. ROTH 0411
429.    Discharge Status Dated 01/31/02
430.    Anesthesia Record dated 01/31/02
431.    Post-Procedure Documentation, Bates No. ROTH 0414
432.    Pre-Operative Checklist dated 01/31/02
433.    Physician Orders dated 01/29/02
434.    Physician Orders dated 01/30/02 -02/1/02
435.    Add-On Test Requisition dated 01/29/02
436.    Department of Nursing - Initial Patient Assessment dated 0/29/02
437.    Interdisciplinary Patient Care Plan dated 01/29/02
438.    Nursing Care Flow Sheet Dated 01/28 – 2/3
439.    TPR/Graphic Flow Sheet  Dated 01/29 – 2/4/02
440.    Intake and Output Form dated 01/29  - 1/31
441.    Interdisciplinary Patient/Family Teaching Record dated 01/29  - 1/30
442.    Routine Medication  Sheet dated 1/29 – 2/4
443.    PRN Medication  Dated 1/29 -2/1
444.    Integrated Progress Notes dated 1/29 -02/1/02
445.    Intra –Departmental Transfer Note dated 01/29/02
446.    History and Physical Report dated 01/29/02 by Dr. White
447.    Progress Notes dated 01/28/02
448.    Progress Notes dated 01/29/02
449.    Progress Notes dated 01/30/02

51347361.3

450.   Progress Notes dated 01/31/02
451.   Progress Notes dated 02/01/02
452.   Clinical Nutrition Assessment Dated 01/29/02
453.   Consultation Form dated 01/30 – 02/01/02
454.   Consultation Form signed by Dr. Campagna
455.   Department of  Laboratory Medicine, Inpatatient Medical Records Copy
       dated 02/03/02
456.   Department of Laboratory Medicine – Blood Bank dated 01/31/02
457.   Department of Laboratory Medicine – Blood Bank dated 02/01/02
458.   ECG Report Dated 01/29/02
459.   Diagnostic Radiology Order for R/O PE Performed 01/28/02
460.   Diagnostic Radiology  Order for S/P Stent Placement Performed 01/31/02
461.   Consent to Flexible Bronchoscopy With or Without Biopsy dated
       01/30/02
462.   Consent to Flexible Bronschoscopy With Stent or Without Biopsy dated
       01/31/02
463.   Consent to Hospital Care and Routine Medical Treatment dated 01/28/01
464.   Consent to Hospital Care and Routine Medical Treatment dated  01/29/02
465.   Patient Data Summary Admission Date 12/18/01
466.   Discharge Report Dated 12/21/01
467.   Lahey Clinic Admission Form  dated 12/18/01
468.   Discharge Summary by Dr. white Transcribed 12/22/01
469.   Patient Care Instructions, Bates No. ROTH 0490
470.   Physician Orders dated 12/18 – 12/21/01
471.   Blank Physician Orders Page, Bates No. ROTH 0494
472.   Department of Nursing - Initial Patent Assessment dated 12/18/01
473.   Interdisciplinary Patient Care Plan dated 12/18 – 12/21
474.   Nursing Care Flow Sheet dated 12/18 – 12/24
475.   Interdisciplinary Patient/Family Teaching Record 12/18 – 12/21
476.   Intake And Output Chart dated 12/19 – 12/20
477.   TPR/Graphic Flow Sheet dated 12/18 – 12/24
478.   Routine Medication sheet Dated 12/18  - 12/24
479.   PRN Medication  dated 12/18 – 12/21
480.   Integrated Progress Notes dated 12/19 -12/20/01
481.   Intra-Departmental Transfer Note dated 12/18/01
482.   Progress Notes dated 12/18/01
483.   Diagnostic Radiology  Progress Notes dated 12/19/01
484.   Progress Notes dated 12/20/01
485.   Progress Notes dated  12/21/01
486.   Department of Laboratory Medicine dated 12/20/01
487.   Behavioral Medicine Consultation form dated 12/20/01
488.   Nutritionist Consultation Form  dated 12/20/01
489.   Patient Data Summary dated 10/28/01
490.   Discharge Report dated 10/26/01
491.   Lahey Clinic Admission Form dated  10/18/01
492.   Discharge Summary by Dr. White Transcribed 4/18/02

493. Patient Care Instructions, Bates No. ROTH 0532
494. Physician Order dated 10/18/01
495. Physician Order dated 10/19 – 10/20/01
496. Physician Order dated 10/21/01
497. Physician Order with handwritten note, Bates NO. ROTH 0536
498. Physician Orders Dated 10/21 - 10/22/01
499. Physician Orders dated 10/23/01
500. Physician Orders dated 10/24/01
501. Physician Orders dated 10/25 – 10/26/01
502. Physician Orders dated 10/27 – 10/28/01
503. Hyperalimentation Order dated 10/20/01
504. Hyperalimentation Order dated  10/21/01
505. Hyperalimentation  Order dated 10/22/01
506. Hyperalimentation Order dated  10/23/01
507. Hyperalimentation Order dated  10/24/01
508. Hyperalimentation Order dated   10/25/01
509. Hyperalimentation Order dated  10/26/01
510. Hyperalimentation Order dated  10/27/01
511. Hyperalimentation  Order dated  10/28/01
512. Department of Nursing – Initial Patient Assessment dated 10/18/01
513. Interdisciplinary Patient Care Plan dated 10/18 – 10/27
514. Nursing Care Flow Sheet dated 10/18 – 10/24
515. Nursing Care Flow Sheet dated 10/25 – 10/27/01
516. Interdisciplinary Patient/Family Teaching Record dated 10/18 -10/27
517. TPR/Graphic Flow Sheet  dated  10/18 – 10/24
518. Intake And Output dated 10/18 -10/24
519. TPR/Graphic Flow Sheet dated 10/25 -10/28
520. Intake And Output dated 10/25 -10/27
521. Routine Medication sheet dated  10/18 – 10/24/01
522. Influenza and Pneumococcal Adult vaccine Documentation Sheet dated 10/20
523. Routine  Medication Sheet dated 10/25 -10/28
524. PRN Medication  dated 10/18 – 10/24/01
525. PRN Medication dated 10/25- 10/28
526. Integrated  Progress Notes dated  10/19 - 10/27/01
527. Blank Integrated Progess Notes, Bates No. ROTH 0582
528. Intra – Departmental Transfer Note dated 10/18
529. History and Physical dated 10/18/01
530. Progress Notes dated 10/19/01
531. Progress Notes dated 10/20/01
532. Progress Notes dated 10/21 -10/22/01
533. Progress Notes dated 10/23/01
534. Progress Notes dated 10/24/01
535. Progress Notes dated 10/24 – 10/25/01
536. Progress Notes dated 10/26/01
537. Progress Notes dated  10/26 -10/27/01

51347361.3

538.  Nutritionist Consultation Form dated 10/19/01
539.  Social Worker's Consultation Form dated 10/19/01
540.  Undated Consultation Form, Bates No. 0601-0602
541.  Consultation Form dated 10/22/01
542.  Consultation Report by Dr. Burns dated 10/23/01
543.  Consultation Form dated 10/24/01
544.  Department of Laboratory Medicine dated 10/26/01
545.  Diagnostic Radiology Order for Question Mets  Performed 10/19/01
546.  Consent To Hospital Care and Routine Medical Treatment dated 10/18/01
547.  Patient Data Summary, Admission Date 08/30/01
548.  Discharge Report Dated 09/01/01
549.  Lahey Clinic Admission Form dated 08/30/01
550.  Discharge Summary by Dr. Williamson dated 09/01/01
551.  Patient Care Instructions dated 08/30
552.  Operative Report By Dr. Williamson dated 08/30/01
553.  Pathology Report  dated 09/10/01
554.  Anesthesia Record dated 08/30/01
555.  Pre-Procedure Assessment dated 08/30/01
556.  Intraoperative Record  dated 08/30/01
557.  Post Anesthesia Care Unit Flow Sheet  dated 08/30/01
558.  Nursing Progress Notes dated 08/30
559.  Pre-Operative Checklist dated 08/30/01
560.  Request for Hospital Admission/Ambulatory Surgery dated 08/30/01
561.  Physician Pre-Admission Orders Form, Bates No. ROTH  0639
562.  Physician Orders, Bates No. ROTH 0640
563.  Physician Orders dated 08/30 -08/31/01
564.  Physician  Orders dated 09/01/01
565.  Initial Patient Assessment dated 08/29/01
566.  Post – Op Chart dated 08/30
567.  Nursing Care Flow Sheet dated 08/30 -09/05
568.  Interdisciplinary Patient/Family Teaching Record  dated  08/30 -08/31/01
569.  TPR/Graphic Flow Sheet  dated 08/30 -09/05/01
570.  Intake And Output dated 08/30  -09/05/01
571.  PRN Medication dated 08/30 -09/01/01
572.  Integrated Progress Notes dated 08/31 – 09/01/01
573.  Display Discharge Summaries, Printed on 08/29/01
574.  Progress Notes dated 08/30 – 08/31/01
575.  Progress Notes dated 09/01/01
576.  Consultation Form dated 08/31/01
577.  Department of Laboratory Medicine dated 09/05/01
578.  Diagnostic Radiology Order for Post op –Lung Status, performed 08/30/01
579.  Consent To Anesthesia dated 08/30/01
580.  Consent to General Thoracic – Pulmonary Surgery dated 08/29/01
581.  Consent to Hospital Care and Routine Medical Treatment dated 08/29/01
582.  Patient Data Summary dated 07/30/01
583.  Discharge Report dated 07/30/01

584.   Lahey Clinic Admission Form dated 07/30/01
585.   Discharge Summary by Dr. Williamson ; Discharge Date 07/31/01
586.   Patient Care Instructions, Bates No. ROTH 0681
587.   Operative Record by Dr. Williamson  dated 07/30/01
588.   Pathology Report, Reported 08/02/01
589.   Post Procedure flow Sheet, Bates No. ROTH 0686
590.   Status Form, Bates No. ROTH 0687
591.   Anesthesia Record dated 07/30/01
592.   Post – Procedure Documentation, Bates No. ROTH 0689
593.   Pre-Procedure Interview dated 07/30/01
594.   Pre-Procedure Assessment dated 07/30/01
595.   Intraoperative Record dated 07/30/01
596.   Request for Hospital Admission/Ambulatory Surgery dated  07/26/01
597.   Physician Orders  dated 07/30/01
598.   Physician Pre-Admission Orders Form dated 07/26/01
599.   Post – Anesthesia Care Unit Orders, Bates No. ROTH 0698
600.   Physician Orders dated 07/30/01
601.   Physician Orders dated 07/30 – 07/31/01
602.   Physician Orders dated 07/31/01
603.   Department if Nursing – Initial Patient Assessment dated 07/30/01
604.   Interdisciplinary Patient Care Plan dated 07/30/01
605.   Nursing Care Flow Sheet dated 07/30/01
606.   Interdisciplinary Patient/Family Teaching Record dated 07/30/01
607.   TPR/Graphic Flow Sheet dated 07/30/01
608.   Routine Medication Sheet dated 07/30 -08/05/01
609.   PRN Medication dated 07/30/01
610.   Integrated Progress Notes dated 07/31/01
611.   Department of Laboratory Medicine dated 07/30/01
612.   Consent To Hospital Care And Routine Medical Treatment dated 07/30/01
613.   Consent To General Thoracic – Pulmonary Surgery dated 07/26/01
614.   Consent to Anesthesia dated  07/30/01
615.   Parziale's Answers to Interrogatories, and all supplements thereto
616.   Defendant's answers to interrogatories.
617.   Hematology Report of Neil J. Werner dated 07/26/01
618.   AHL Claim Referral note dated 02/27/03 bearing Bates stamp AHL00233.
619.   Note from Neil Crawford dated 03/21/02 bearing Bates stamp AHL00244
620.   AHL Claim Referral note dated 04/17/02 bearing Bates stamp AHL00236.
621.   Thoracic Cardiovascular Surgery note dated 07/26/01 Bates stamp
        AHL00296.

B.    Exhibits to Which the Parties Reserve the Right to Object:

1.    Defendant reserves the right to object to the September 29, 2004 letter
       from Dr. Rothchild to Patricia Michaels, Esq

-25-

2. Plaintiff reserves the right to object to any of the aforementioned exhibits within the time, and in the manner prescribed by the Pre-Trial Conference Order.


Respectfully submitted,


**WILLIAM PARZIALE,**                          **AMERICAN HERITAGE LIFE INSURANCE COMPANY,**


By his attorney,                              By its attorneys,


/s/ Patricia Michaels                         /s/ Hobart F. Popick (with permission)
Patricia Michaels (BBO # 642945)              Jonathan I. Handler (BBO # 561475)
10 Tremont Street, 4th Floor                  Hobart F. Popick (BBO # 658763)
Boston, Massachusetts 02108                   DAY, BERRY & HOWARD LLP
(617) 227-1550                                One International Place
                                              Boston, Massachusetts 02110
                                              (617) 345-4600


Dated:  July 12, 2006


## CERTIFICATE OF SERVICE

I, Patricia Michaels, hereby certify that on the 12th day of July 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to:  Hobart F. Popick, Esq., Day, Berry & Howard LLP, One International Place, Boston, Massachusetts 02110.


/s/ Patricia Michaels
Patricia Michaels


-26-

51347361.3