LAW OFFICE OF PATRICIA MICHAELS
10 TREMONT STREET 4TH FLOOR
BOSTON, MA 02108
(617) 227-1550
FACSIMILE - (617) 227-1545

December 1, 2004

Sent Via Fax: (617) 345-4745
and regular mail

Hobart F. Popick, Esq.
DAY, BERRY & HOWARD LLP
260 Franklin Street
Boston, MA 02110-3179

Re: Parziale v. Allstate

Dear Attorney Popick:

    As you know, I represent Mr. William Parziale (Parziale). Parziale has filed a claim against The Allstate Corporation a/k/a Allstate Workplace Division and American Heritage Life Insurance Company (Allstate/American) alleging failure to pay to him the death benefit for a life insurance policy issued by Allstate/American to Maryann Veronesi (Veronesi). Veronesi died on March 4, 2002. At the time of her death, there was in full force a term life insurance policy issued through American Heritage Life Insurance Company with a death benefit in the amount of ninety-nine thousand dollars ($99,000.00).

    On or about July 25, 2001, Veronesi applied for a life insurance policy in the amount of $99,000. Veronesi named William Parziale as her beneficiary. Allstate/American approved her application without a medical exam, accepted payment of the premium and issued the policy with an effective date of July 25, 2001. Veronesi died on March 4, 2002. On March 15, 2002, Parziale submitted a claim for the proceeds of the policy. On or about March 7, 2003 Allstate/American rescinded the policy asserting Veronesi failed to properly answer Question 14, Part 2 (a) and (b) on her application for insurance.

    Question 14 Part 2 (a) and (b) are as follows "Has the person to be insured: (a) been examined or treated at a hospital or other medical facility (within last five years) or are they currently under the care of a doctor? (b) been advised to have or contemplate having any diagnostic test, treatment or surgery? To the right of the questions were boxes, one box for a "yes" answer and one for a "no." There was a check mark in the "no" box for both questions. During the course of its investigation, Allstate/American discovered that Veronesi was seen by her primary care physician, Dr. Rothchild, on July 12, 2001, approximately two weeks before completing the application for the life insurance policy. At that time, her primary complaint was fatigue.

Allstate/American informed Parziale that since Veronesi saw Dr. Rothchild two weeks before the application, and because she was told that she needed a CT scan, and she failed to check "yes" to Question 14 Part 2(a) and (b), Allstate/American would not honor Parziale's demand to pay the policy benefit.

The statute applicable to life insurance policies issued without a medical examination requires the insurer to prove the insured's statements were willfully false, fraudulent, or misleading. See M.G.L. c. 175 § 124. In an action on a life insurance policy, the insurer has the burden to prove not only that false representations were made, but either that representations were made with actual intent to deceive or that the matter misrepresented increased risk of loss. Where an insurer seeks to avoid liability on a life insurance policy on the ground that the insured made a false misrepresentation in application with actual intent to deceive, such intent is not to be presumed, but must be proved. M.G.L. c. 175 §186.

Actual intent to deceive is not to be presumed. It is a matter to be proved. *McDonough v. Metropolitan Life Ins. Co.*, 228 Mass. 450, 453 (yr?). No doubt these somewhat complicated applications for life insurance are frequently filled out by a person other than the insured himself - possibly by an eager agent. An incorrect statement does not necessarily indicate actual intent to deceive. And it cannot be said, as a matter of law, that a misrepresentation that an applicant has not, within five years, consulted or been treated by a hospital or a physician increased the risk of loss. Quite the contrary might be true. *Levie v. Metropolitan Life Ins. Co.*, 163 Mass. 117, 119 (yr). In this case, Allstate/American has the burden of proving that Veronesi understood and completed the application herself. There is no evidence whether the application was completed by Veronesi or Robert Ehrlich (Ehrlich), the insurance agent who took the application. We do not know of any exchange between Veronesi and Ehrlich, who is now deceased.

The mere fact that Veronesi saw Dr. Rothchild on July 12, 2001 and that the information was not documented on the application is not material. Defendants have no evidence as to whether the omission was a "misrepresentation" by Veronesi or, more likely, an oversight or scrivener's error by Ehrlich.

A review of the records and notes from Veronesi's July 12, 2001 office visit with Dr. Rothchild (Rothchild) indicate that based upon her complaints, Rothchild opined that Veronesi was suffering from an infection - possibly mono. In fact, the notes further reveal that Veronesi had mono a few years earlier and her symptoms at that time were very similar. A chest x-ray was performed on July 13, 2001. The impression provided by the radiologist was: "No acute abnormality; slight fullness, most likely a normal variant, prominent pulmonary artery. However, CT is recommended to exclude possibility of adenopathy, if no old films are available for comparison (none currently available)." In response to an inquiry concerning what information, if any, Veronesi was given concerning her differential diagnosis, Rothchild stated that he did not speak with Veronesi about a possible diagnosis, other than "discussing a possible infection." Dr. Bilello (Bilello), a resident, assigned to work with Rothchild at the time of the July 12,

2001 visit, also examined Veronesi. Rothchild's letter dated September 29, 2004 and annexed to this correspondence as Exhibit A states that while Rothchild himself did not discuss any possible adenopathy or need for a CT-scan with Veronesi, he "presumes" Bilello did so. Rothchild goes on to say that there was an order for a thoracic CT-scan written by Bilello, but the order was undated. Bilello is no longer at Lahey Clinic and is not registered with the Massachusetts Board of Registration in Medicine. There is no information contained in the record as to what, if anything, Bilello discussed with Veronesi concerning her state of health.

In view of all of the known facts, Allstate/American has no evidence that Veronesi's answers on the application for insurance were willfully false, fraudulent, or misleading. In fact, there is no evidence that the answers on the application were actually the responses made by Veronesi to the agent. There is no evidence that any of the representations were made with actual intent to deceive Allstate/American or that the matter misrepresented increased risk of loss. Allstate/American cannot meet its burden of proof that Veronesi made false misrepresentations on the application with actual intent to deceive.

Based upon all of the facts known at the present time, William Parziale demands $85,000 in full and final settlement of this matter.

Very Truly Yours,

Patricia Michaels

PMM/

Enc.

cc:    Mr. William Parziale



41 Mall Road
Burlington, MA 01805
781-744-5100

September 29, 2004

Law Office of Patricia Michaels
10 Tremont Street, Fourth Floor
Boston, MA 02108

RE: FINK, MARYANN
LC#: 2060782

Dear Ms. Michaels:

I am responding to your letter of August 17. I apologize for the delay in getting back to you.

I have reviewed Mrs. Fink's record. She had been seen by myself and my resident, Vincent Bilello, on July 12, 2001. I was able to find an order for a thoracic CT scan written by Dr. Bilello. This was presumably prior to the emergency room visit, but unfortunately the order was undated. I presume that Dr. Bilello had spoken with her about her need for a CT scan, but I have no documentation of this. The likelihood is that she was aware that she needed a CT scan, and aware that there was a question of adenopathy in the chest. I myself did not speak with her regarding a possible diagnosis, other than discussing a possible infection on July 12, 2001.

Please let me know if you have additional questions.

Sincerely,

Joseph Rothchild, MD
Department of General Internal Medicine
(781) 744-8534

JR:kas
D: 09/29/2004 16:09:12
T: 09/30/2004 13:58:27
J: 4319736

CC:

**THIS DOCUMENT WAS ELECTRONICALLY AUTHENTICATED BY Joseph Rothchild, MD ON 09/30/2004 15:25:24**

EXHIBIT A