UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM PARZIALE, )<br>)<br>        *Plaintiff,* )<br>v.                                                          )<br>)<br>AMERICAN HERITAGE LIFE INSURANCE )<br>COMPANY, A WHOLLY OWNED       )<br>SUBSIDIARY OF THE ALLSTATE      )<br>CORPORATION,                               )<br>)<br>        *Defendant.* )<br>_____ ) | Civil Action No. 04-11377-RBC |

**DEFENDANT'S REPLY TO PLAINTIFF'S REQUEST TO REDACT
MEDICAL RECORDS REFERRING TO THE INSURED'S PLANNED CT SCAN**

Pursuant to the Court's September 28, 2006 Order, Defendant American Heritage Life Insurance Company ("AHL") hereby submits its Reply to Plaintiff William Parziale ("Parziale")'s *Submission of Documents Pursuant To Pre-Trial Order* (the "Submission"), which Parziale filed in support of his *Motion In Limine To Preclude Hearsay Statements Contained In Medical Records* (the "Motion").[1]

I.      **INTRODUCTION AND BACKGROUND**

Parziale filed the Motion on July 19, 2006 seeking to preclude introduction in evidence of any statements contained in the insured Maryann Veronesi's medical records that she was "planning to have a CT scan." Parziale does not dispute that this evidence is relevant – nor could he – because whether Ms. Veronesi was planning on having such medical treatment in July 2001 is probative of her intent in making various statements regarding her medical history on the July 25, 2001 application for the life insurance policy (the "Policy") in issue in this case. Indeed,

---

[1] AHL incorporates by reference its *Omnibus Opposition to Plaintiff's Motions in Limine,* filed with the Court on August 2, 2006.

Parziale apparently contends that whether Ms. Veronesi was told to have a CT scan in July 2001 is at the heart of the issues to be decided by the jury in this case. (See Plaintiff's Proposed Jury Verdict Form, Question 1). Nonetheless, Parziale seeks to exclude evidence regarding Ms. Veronesi's planned CT scan on grounds that it is hearsay. Parziale's argument is without merit.

At the August 16, 2006 pre-trial conference, the Court heard oral argument on the Motion. The Court deferred its ruling on the Motion, however, pending Parziale's submission to the Court of those documents he seeks to have redacted. Parziale has now submitted seven (7) such documents in response. As described below, the statements in question were made for purposes of diagnosis or treatment within the meaning of Fed. R. Evid. 803(4) and are therefore admissible. Accordingly, the Court should deny the Motion and decline Parziale's request to redact relevant evidence from Ms. Veronesi's medical records.

## II.   ARGUMENT

### A.   LEGAL STANDARD

Statements contained in medical records are admissible notwithstanding the hearsay rule if they satisfy the requirements of Rule 803(4) of the Federal Rules of Evidence:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Fed. R. Evid. 803(4).

Thus, courts may admit hearsay statements contained in medical records if: "(1) the statements [are] made for purposes of diagnosis or treatment (2) about (i) medical history (ii) or past or present symptoms, pain or sensations or (iii) about the inception or general character of the cause or external source thereof (3) insofar as they are reasonably pertinent to diagnosis or treatment." See Bucci v. Essex Ins. Co., 393 F.3d 285, 298 (1st Cir. 2005) quoting Danaipour v.

McLarey, 386 F.3d 289, 297 (1st Cir. 2004). As described below, each of the statements Parziale seeks to exclude meet these requirements and are therefore admissible in evidence under Fed. R. Evid. 803(4).[2] Because many of these statements are similar, if not identical, AHL will address them in three broad categories in the interest of brevity.

  B. **EACH OF THE STATEMENTS IN QUESTION MEETS THE MEDICAL RECORDS EXCEPTION TO THE HEARSAY RULE**

    1. Exhibit A[3] - July 31 Discharge Summary; Exhibit B – July 25 Progress Notes

Parziale seeks to exclude the words "she was planning on having a CT scan of the chest to investigate this" from the last sentence of the first paragraph of Dr. Christine Williamson's July 31, 2001 Discharge Summary. (See Ex. A). Dr. Williamson prepared this document following an operation she conducted on Ms. Veronesi in order to diagnose the nature of the mass in Ms. Veronesi's lung that the Lahey Clinic emergency room discovered on July 25, 2001. As Dr. Williamson noted in her description of the history of Ms. Veronesi's ailments, Ms. Veronesi had originally complained of shortness of breath and difficulty swallowing to her primary care physician, Dr. Joseph Rothchild, in early July 2001, and later to staff in the Lahey Clinic Emergency Room on July 25, 2001. (See also Ex. B.) The Discharge Summary states, in pertinent part:

---

[2] Although Ms. Veronesi's medical records in some cases contain multiple layers of hearsay (i.e. both the medical records and the statements within them are out of court statements offered for their truth), both are admissible because each layer of hearsay satisfies an exception to the hearsay rule. See U.S. v. Ferber, 966 F. Supp. 90, 96 (1st Cir. 1997), citing Fed. R. Evid. 805. First, Ms. Veronesi's medical records are admissible as business records under Fed. R. Evid. 803(6) because they are "kept in the course of a regularly conducted business activity, and … it was the regular practice of that business activity to make the … record." Fed. R. Evid. 803(6). Second, as described below, the statements within Ms. Veronesi's records are admissible as statements made for the purposes of diagnosis or treatment under Fed. R. Evid. 803(4).

[3] The reference "Exhibit __" refers to exhibits attached to the Submission.

> History: This is a 32-year-old woman who presented to the emergency room complaining of shortness of breath. She states 3 weeks ago she noticed a difficulty swallowing, but no pain. ... She had a chest x-ray ordered by her primary care physician last week, which would be mid July of this year, which showed some question of adenopathy in the chest, and in the emergency room on July 25, 2001, <u>she was planning to have a CT scan of the chest to investigate this.</u>

(<u>See</u> Ex. A) (emphasis added).

These statements are admissible under Fed. R. Evid. 803(4) as an exception to the hearsay rule for several reasons. First, it is apparent from the "History" section of Dr. Williamson's July 31 Discharge Summary that Ms. Veronesi related the information therein to Dr. Williamson for "purposes of diagnosis or treatment" within the meaning of Fed. R. Evid. 803(4). <u>See</u> <u>Bucci</u>, 393 F.3d at 298. Indeed, Dr. Williamson's summary expressly references Ms. Veronesi's statements: "32-year-old woman ... complaining of shortness of breath. <u>She states</u> 3 weeks ago she noticed a difficulty swallowing." (<u>See</u> Ex. A) (emphasis added). Although the July 25 Progress Notes do not identify the speaker, the identity of the speaker in a medical record need not be explicitly stated where "it is nonetheless clear that the statements were made for purposes of medical treatment and were admissible." <u>See</u> <u>Bucci</u>, at 299. Moreover, "[t]here is no requirement, either in the text of the Rule, or in the case law, that the speaker be the patient himself." <u>See</u> <u>Bucci</u>, at 298. Thus, because the July 25 Progress Notes make clear that the referenced CT scan was part of Ms. Veronesi's diagnosis and treatment, the statements are admissible. (<u>See</u> Ex. B.) ("patient presented to the emergency room with shortness of breath ... she had a chest x-ray ... which showed some question of adenopathy in the chest and the emergency room is planning a CT scan of the chest to investigate this.")

Second, these statements concern Ms. Veronesi's medical history. Both the July 31 Discharge Summary and the July 25 Progress Notes describe Ms. Veronesi's visit to her primary care physician and resulting chest x-ray showing "some question of adenopathy in the chest,"

-4-

and describe the emergency room's plans to perform "a CT scan of the chest to investigate this." (See Ex. A & B.) Third, the statements in Exhibits A and B are "reasonably pertinent to diagnosis or treatment" Bucci, 393 F.3d at 298, because they relate directly to the ailments Ms. Veronesi complained of (i.e., hoarseness, shortness of breath and difficulty swallowing), and to the course of treatment being prescribed by Dr. Williamson and the Lahey Clinic emergency room staff. (See id.)

The only basis that Parziale offers for exclusion and redaction of this language is his conclusory assertion that this language is "ambiguous." Parziale contends that the "ambiguous" statement is "clarified" by the July 25 Progress Notes, which state, in part: "[s]he had a chest x-ray ... which showed some question of adenopathy in the chest and the emergency room is planning a CT scan of the chest to investigate this." (See Ex. B.) Parziale asserts that this demonstrates that "it was the emergency room that was planning on the CT scan." (See Submission at 1.) Parziale's argument makes no sense with respect to Exhibit A, which could not reasonably be read to mean other than what it plainly says, i.e., that in the emergency room on July 25, Veronesi was "planning on having" a CT scan (which she did).

There is no dispute that Ms. Veronesi had a CT scan in the emergency room on July 25, 2001 at the Lahey Clinic. Indeed, the July 31 Discharge Summary specifically references the July 25, 2001 emergency room visit in the context of Ms. Veronesi's CT scan. Parziale argues that the key issue in this case is whether Veronesi was told to have a CT prior to filling out the July 25, 2001 application for the Policy. However, there is no dispute that the July 31 Discharge Summary and the CT scan to which it refers occurred after Ms. Veronesi completed her application for the Policy. Thus, Parziale's argument that the July 31 Discharge Summary is "ambiguous" is not only without support, but it has no bearing on Parziale's assertion that

Ms. Veronesi was unaware of her planned CT scan as of the date of her application for the Policy. Accordingly, Exhibits A & B do not support Parziale's contentions regarding the "ambiguity" as to the timing of Ms. Veronesi's CT scan, and, in any event, are admissible.

In sum, the statements in the July 31 Discharge Summary and the July 25 Progress notes regarding Ms. Veronesi's planned CT scan are admissible as statements made for purposes of diagnosis or treatment under Rule 803(4). Parziale's argument that the statements suggest that the emergency room was to perform the CT scan at issue merely restates the obvious and does not support exclusion of this evidence.

2. Exhibit C – August 23 Radiation Therapy Note; Exhibit D – July 12 Progress Notes[4]

Parziale also seeks to exclude the statement in the August 23, 2001 Radiation Therapy Note, that Ms. Veronesi was "scheduled for a CT, but reported to the ER." (See Ex. C.) As described above, this statement is admissible as an exception to the hearsay rule because it was made for "purposes of diagnosis or treatment" within the meaning of Fed. R. Evid. 803(4). Not only does this statement concern Ms. Veronesi's medical history, but it is "reasonably pertinent to diagnosis or treatment" because the CT scan was used to determine that a mass in Ms. Veronesi's lung was responsible for her symptoms of shortness of breath and difficulty swallowing. See id.

Parziale argues that the Court should exclude this statement because "there is no evidence in the record that Veronesi was told to have a CT scan." While Dr. Rothchild's Progress Notes dated July 12, 2001, do not mention an order for a CT scan (see Ex. D), Dr. Rothchild's office did place an order at that time for a CT scan to take place "within 2 weeks." (See Lahey Clinic

---

[4] Parziale apparently is not seeking to also exclude Ex. D, to the extent that he relies on this document to support his assertions that Dr. Rothchild did not inform Ms. Veronesi of her planned CT scan.

Ambulatory Order Form, attached hereto as Ex. 1) (noted by emphasis supplied on document). Parziale's suggestion as to what reasonable conclusions may be drawn from the evidence attempts to usurp the role of the jury in this case. See Blake v. Pellegrino, 329 F.3d 43, 47, 51 (1st Cir. 2003) ("By redacting the operative cause of death language from the death certificate on the ground that it lacked persuasive force, the district court invaded the jury's province and thus exceeded the scope of its discretion.")  Thus, the jury should be permitted to consider all of the evidence in Ms. Veronesi's medical records and determine if it can reasonably infer from the fact that there was a CT scan ordered before July 25, 2001 that Ms. Veronesi knew of this planned treatment at the time she applied for the Policy.

Moreover, Parziale's suggestion that there is "no evidence" in the July 12 Progress Notes that Veronesi was told to have a CT scan appears to be based solely on Dr. Rothchild's statements in the September 29, 2004 letter that he "did not speak with her regarding a possible diagnosis." (See September 29, 2004 letter from Dr. Rothchild to P. Michaels, attached to the Submission as Ex. F.)  The Court, however, has already ruled that the Dr. Rothchild letter is inadmissible (see August 16, 2006 Order), so Parziale cannot rely upon it as a basis for excluding admissible evidence regarding Ms. Veronesi's medical history.  If Parziale wishes to present testimony from Dr. Rothchild to rebut the statements in Ms. Veronesi's medical records, he may do so, but Parziale may not rely on an inadmissible document to present the very same evidence that could be obtained through direct examination of Dr. Rothchild at trial. See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 410 (1st Cir. 2002) (no error to exclude report summarizing the result of investigation where the same information could have been elicited through direct testimony at trial).

In sum, the jury should be permitted to evaluate admissible evidence contained in Ms. Veronesi's medical records and to draw reasonable inferences in determining what Ms. Veronesi knew with respect to her medical history at the time she applied for the Policy. See Blake, 329 F.3d at 47. Accordingly, the Court should decline Parziale's request to redact Exhibits C & D.

   3. <u>Exhibit E – August 21 MGH Cancer Center Office Visit; Exhibit G – August 21 MGH Cancer Center Office Visit, Panos Fidias M.D.; & Exhibit H – August 23 Radiation Therapy Note</u>

Parziale also seeks to exclude the statements that Ms. Veronesi "was scheduled for a CT-scan but developed additional chest pain and was evaluated in the emergency room," (see Ex. E) that Ms. Veronesi "was to undergo CT scanning," (see Ex. G) and that Ms. Veronesi "was then scheduled for a CT." (See Ex. H.)[5]

As discussed above, statements in medical records are admissible if they describe "medical history, or past or present symptoms, pain, or sensations, or the inception or general character ... thereof insofar as reasonably pertinent to diagnosis <u>or treatment</u>." See Fed. R. Evid. 803(4) (emphasis added). Here, the statements in question relate to Ms. Veronesi's "medical history" because they concern her shortness of breath and hoarseness, when those symptoms began, and how Ms. Veronesi was not only diagnosed, but how she was treated for those symptoms. Thus, Parziale's argument that the statements in these records "were not made for purposes of diagnosis or treatment because the records were generated after Veronesi was diagnosed" is incorrect. Danaipour, 386 F.3d at 297, n. 1. "There are many ways in which a party wishing to enter into evidence a statement under Rule 803(4) can demonstrate that the

---

[5] Exhibit H, Bates No. AHL 00299 is identical in all material respects to Exhibit C, Bates No. ROTH 0057; accordingly, AHL incorporates by reference herein its arguments regarding Exhibit C.

statement was made for the purpose of diagnosis or treatment; a per se rule requiring a doctor to explain to the victim why a [particular] statement ... is important to diagnosis and treatment is unnecessarily inflexible." Accordingly, the statements regarding Ms. Veronesi's planned CT scan are admissible under Fed. R. Evid. 803(4)

Parziale's argument that these statements should be withheld from the jury because "there is no evidence that [Ms. Veronesi] was 'scheduled' to have a CT-scan" likewise fails because it is based solely on the inadmissible Rothchild letter. (See Ex. F.) As described above, Parziale may not preclude introduction of relevant, admissible evidence based on his conclusory interpretation of a document that the Court has already excluded from evidence.

Finally, to the extent that Parziale contends that the statements in Exhibits E, G & H are inadmissible because Ms. Veronesi herself did not make them, this argument is likewise without merit. As noted above, Rule 803(4) does not require Ms. Veronesi to have made these statements herself in order for them to be admissible because they were plainly made for purposes of medical diagnosis or treatment. See Bucci, 393 F.3d at 298-99. Moreover, given the context of the statements, there are only a limited number of persons other than Ms. Veronesi who could have made them, all of whom were Lahey Clinic staff who made these statements in connection with Ms. Veronesi's treatment. See Onujiogu, 817 F.2d at 5.

Therefore, contrary to Parziale's assertions, it is apparent from the context of these statements that they were made to further Ms. Veronesi's diagnosis or treatment, and they are admissible under Rule 803(4), and the Court should deny Parziale's request to redact Exhibits E, G & H.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, the Defendant American Heritage Life Insurance Company respectfully requests that this Court deny *Plaintiff's Motion to Preclude Hearsay Statements Contained in Medical Records* and decline Parziale's request to redact the documents Parziale identifies in his *Submission of Documents Pursuant to Pre-Trial Order*.

Respectfully submitted,

AMERICAN HERITAGE LIFE INSURANCE COMPANY,

By its attorneys,

/s/ Hobart F. Popick
Jonathan I. Handler (BBO # 561475)
Hobart F. Popick (BBO # 658763)
DAY, BERRY & HOWARD LLP
One International Place
Boston, Massachusetts 02110
(617) 345-4600

Dated: October 23, 2006

### CERTIFICATE OF SERVICE

I, Hobart F. Popick, hereby certify that on the 23rd day of October, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to: Patricia Michaels, Esq., 10 Tremont St., 4th Floor, Boston, Massachusetts 02108.

/s/ Hobart F. Popick
Hobart F. Popick

# EXHIBIT 1

# Lahey CLINIC  AMBULATORY ORDER FORM

Record here, if taken:
HT.
WT.
BP
TPR

ANK ☐    CANCELLED ☐

Maryann Finh
206-07-82

REASON FOR APPOINTMENT:

☐ KEEP CHART TODAY    ☐ REQ. CHART AFTER FUTURE TST/CON    ☐ SEND CHART BACK

CHIEF COMPLAINT:

NO ORDERS ☐  IF NO ORDERS, REASON FOR VISIT:

| PHYSICIAN REASON FOR ORDERS. (PROBLEM, SYMPTOM, IMPRESSION) | ✓ | DIAGNOSTIC TESTS CONSULTATIONS, APPOINTMENTS | U=URGENT I=IMPORTANT S=STANDARD R=REVIEW L=LETTER | TIME-FRAME REQUESTED AND/OR THERAPEUTIC MEASURES |
|---|---|---|---|---|
| ? Lymphadenopathy on CXR, CP, odynophagia | | Chest CT          785.6 | | w/in 2 wks |
| | | BICRR/RICHD | | |
| | | [signature] | | |

ROTH 0041

13025 (REV. 10/00)